## AUDIT SERVICES, INC., Plaintiff-Appellee,

v.

## Marselius ROLFSON d/b/a Rolfson Company and Marcus Rolfson d/b/a Rolfson Company, Defendants-Appellants.

### No. 79–4004.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 6, 1980.

Decided April 6, 1981.

As Amended April 13, 1981.

---

C. B. McNeil, Turnage & McNeil, East Polson, Mont., for defendants-appellants.

Maxon R. Davis, Cure & Borer, Great Falls, Mont., for plaintiff-appellee.

Before VAN DUSEN,[*] ANDERSON and BOOCHEVER, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

The defendants appeal the judgment of the district court awarding plaintiff Audit Services, Inc., sums allegedly due to its assignors, certain union trust funds, as contributions for time worked by the defendants' nonunion employees. We affirm in part and reverse in part.

## I. BACKGROUND

Marselius and Marcus Rolfson, father and son, respectively, are now engaged in separate business ventures in Polson, Montana. For many years, Marselius operated a construction and lumber business as a sole proprietorship known as Rolfson Company. Marcus joined Rolfson Company sometime around 1970 and quickly assumed an ever-widening range of supervisory authority over the company's operations. Late in 1975, Marselius decided to retire from the construction business. Marcus, in effect, took the business over and formed a new entity, Rolfson Construction, a Montana corporation. Rolfson Construction has remained physically close to Rolfson Company. Rolfson Construction maintains its office at the Rolfson Company lumber yard, and uses Rolfson Company's bookkeeper. Rolfson Construction's shop is located across the street from the lumber yard in a building owned by Marcus. Rolfson Construction uses much of the same equipment as was used by Rolfson Company, and has employed many carpenters who formerly worked for Rolfson Company under substantially similar terms of employment.

In 1972, 1973, and 1975, Rolfson Company entered into a series of collective bargaining agreements with the Carpenters District Council of Northwestern Montana. Under the terms of each agreement, Rolfson Company was obligated to contribute a specified amount of money for each hour worked by its employees to the Montana State Carpenters Health and Welfare Trust and to the Washington-Idaho-Montana Carpenters—Employers Retirement Fund. While contributions to the funds were made on behalf of union members, neither Rolfson Company nor Rolfson Construction ever made any contributions on behalf of nonunion employees. Nonunion employees instead have received cash payments equivalent to the amounts which would have been contributed had they been members of the union. Even though Rolfson Construction never signed any of the agreements, it continued to pay contributions on behalf of union employees, and to make direct payments to nonunion employees. Rolfson Construction also continued to submit monthly remittance reports to the trusts.

Sometime in 1976, the Montana Carpenters Trust requested an audit of the Rolfsons' payroll records. The Rolfsons initially refused access to the records. According to Audit Services, the trustees were informed for the first time at a meeting with the Rolfsons to discuss access to the records that Marcus had formed Rolfson Construction and that Rolfson Construction was employing the carpenters covered by the agreements. When an audit was finally conducted in 1977, the trustees discovered that the Rolfsons had not made any contributions to the funds on behalf of nonunion employees. The trustees of the funds at some unspecified time assigned their claims to the unpaid contributions to Audit Services for collection.

Audit Services brought an action under the Employee-Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132, and

---

[*] The Honorable Francis L. Van Dusen, Senior Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

§ 301 of the Labor Management Relations Act, 29 U.S.C. § 185, to recover the unpaid contributions. Following a bench trial, the district court found each of the defendants liable for portions of the total unpaid contributions. The court assessed the liability of Marselius and Rolfson Company at $10,949.13, and the liability of Marcus and Rolfson Construction at $15,594.26. The court found that the language of the agreements clearly called for the payment of contributions on behalf of nonunion members, and rejected parol evidence to the contrary. The court further found that Rolfson Construction was a successor to Rolfson Company liable under the agreements, and that Rolfson Construction was a "mere shell" which could not shield Marcus from personal liability. All defendants appeal.

## II. *ISSUES ON APPEAL*

Essentially, the parties have raised and briefed four issues on appeal:

(1) Whether the collective bargaining agreements required the payment of trust fund contributions on behalf of nonunion carpenters;

(2) Whether certain equitable defenses may be asserted in this action;

(3) Whether Rolfson Construction is liable under the collective bargaining agreements as a successor to Rolfson Company;

(4) Whether the court properly disregarded the corporate form of Rolfson Construction in holding Marcus Rolfson personally liable.

## III. *DISCUSSION*

Though none of the parties raised the issue in their respective briefs, we requested that they address at oral argument the issue whether the district court had jurisdiction pursuant to § 301 of the Labor Management Relations Act of 1947. § 301(a) reads:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor or-

ganizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

29 U.S.C. § 185(a).

■ Audit Services is not a "labor organization." It is irrelevant, however, whether the plaintiff in a § 301 action is a labor organization. The Supreme Court has interpreted § 301 to require only that the object of the suit be the enforcement of rights guaranteed by an agreement between an employer and a labor organization, and not strictly that the suit itself be between a labor union and an employer. *See Smith v. Evening News Association,* 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246 (1962); *see also Rehmar v. Smith,* 555 F.2d 1362 (9th Cir. 1976); *Alvares v. Erickson,* 514 F.2d 156 (9th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 106 (1975). It is not disputed that Audit Services holds by assignment the right to fund contributions created by the collective bargaining agreements at issue here. This being a suit brought to enforce provisions of those agreements, the district court had jurisdiction.

### A. *Interpretation of the collective bargaining agreements.*

Each of the defendants argues that the collective bargaining agreements were ambiguous on the issue whether payments were required on behalf of nonunion employees, and that the district court should have accepted their offer of certain parol evidence which allegedly would have tended to establish that union representatives had orally assured Marselius that the trust fund contributions were applicable only to union employees.

■ We agree with the district court that the agreements unambiguously call for payments to be made on behalf of all employees, nonunion as well as union members. In Article III, Section One of the 1972 agreement, the employer acknowl-

edges that the union is the exclusive bargaining representative for "all employees" covered by the agreement. In Article XII, Section Two, the agreement states that:

"The undersigned Employer further agrees that upon execution of this agreement, the Employer will remit twenty-five (.25¢) cents per hour for each compensated hour worked by *each employee covered by this Agreement* into the Montana State Carpenters Health and Welfare Trust and thirty-five (.35¢) cents per hour for each compensated hour worked by *each employee covered by this Agreement* into the Washington-Idaho-Montana Carpenters—Employer [sic] Retirement Trust." (Emphasis added)

Article XII, Section One provides that the Employer is made a party to the trust agreements. All of the language quoted or referred to above is carried forward in substantially similar terms to the 1973 and 1975 agreements.

In the Revised and Restated Trust Agreement of the Montana State Carpenters Health and Welfare Trust (as amended to July 16, 1976), Article I, Section Five defines the term "employee" to mean any employee of an employer who performs work covered by a collective bargaining agreement ". . . whether such Employee is Union, Non-Union, permanent or temporary." The Amended Trust Agreement of the Washington-Idaho-Montana Carpenters—Employers Retirement Trust Fund (as amended to January 1, 1976) defines "employee" in a similar fashion, specifically noting that contributions are required for each employee whether the employee is ". . . union or non-union, permanent or temporary, part-time or full-time."

The clarity of this language leaves no doubt as to the Rolfsons' obligations to con-

tribute. The language of the agreements standing alone strongly supports the inference that non-union carpenters are covered and the language of the trust agreements to which the employer was made a party explicitly confirms the point. Our interpretation is consistent with results reached by other courts construing similar, but sometimes less explicit, language in bargaining and trust fund agreements. *See, e. g., Carpenters & Millwrights v. Gardineer*, 573 F.2d 1172 (10th Cir. 1978); *Manning v. Wiscombe*, 498 F.2d 1311 (10th Cir. 1974); *Markt v. Ro-Mart, Inc.*, 471 F.Supp. 1292 (N.D.Calif.1979).

Because the documentary evidence was clear and unambiguous, the district court properly rejected contradictory extrinsic evidence.[1] *See generally Syufy Enterprises v. Northern California State Association*, 631 F.2d 124 (9th Cir. 1980).

■ The payment of cash to nonunion employees, however well-intentioned such payment may have been, does not excuse the obligation to make contributions to the funds. The contract sued upon is between the union and the trustees on the one hand, and the employer on the other. The funds are established for the benefit of all employees covered by their language and are depleted by the amount which the Rolfsons have refused to contribute. *See Local 9, International Union of Operating Engineers v. Siegrist Construction Co.*, 458 F.2d 1313 (10th Cir. 1972).

### B. *Assertion of equitable defenses*

The defendants ask that we impose upon Audit Services the equitable defenses of estoppel and laches to bar its claim to the unpaid contributions. We do not think it appropriate that either defense be applied in this case.

---

1. We disagree with the Rolfsons' contention that the district court improperly relied upon Audit Service's oral representation that the trusts are obligated to the nonunion employees. As the district court noted, there was no dispute between the nonunion employees and the trusts before it in this case. The district court's purely gratuitous comment that were it not for such an obligation it would have interpreted the agreements to not require contributions on

behalf of nonunion employees does not represent a finding based on evidence outside the record, but merely an admonishment to the plaintiff to maintain its position consistently in the event that any claim to the trust funds is asserted by nonunion carpenters in the future. It was beyond the scope of the issues presented, and we mean to express no opinion on the validity of any individual claims to the funds.

■ Because an action brought under § 301(a) of the Labor Management Relations Act is an action arising under a federal statute, the federal common law, rather than state law, is controlling with respect to the availability of the estoppel defense. *See Thurber v. Western Conference of Teamsters Pension Plan*, 542 F.2d 1106, 1108 (9th Cir. 1976). Estoppel in this circuit has been defined as containing the following elements:

> " '(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.' "

*Bob's Big Boy Family Restaurants v. N. L. R. B.*, 625 F.2d 850, 854 (9th Cir. 1980), *quoting Hampton v. Paramount Pictures Corp.*, 279 F.2d 100 (9th Cir.), *cert. denied*, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960).

■ In *Employer-Teamsters Joint Council No. 84, Health and Welfare Fund v. Weatherall Concrete*, 468 F.Supp. 1167 (S.D. W.Va.1979), the defendant employer raised an estoppel defense to an action to recover unpaid contributions. The employer there had continued to make contributions at a lower rate than called for by a new collective bargaining agreement and the trust, through clerical oversight, had continued to accept the low payments. The *Weatherall* court refused to apply estoppel because the employer had in its possession the new collective bargaining agreement which clearly provided for the higher rate of contributions. The employer, therefore, knew or should have known that the higher rates applied, and could not claim ignorance of the increase. Similar reasoning, we believe, requires that Audit Services not be estopped here. We have determined that the collective bargaining agreement unambigu-

ously called for the payment of the contributions on behalf of nonunion carpenters. Even if we could somehow find that the trustees intended to mislead the defendants, and nothing in the record indicates such an intent, we cannot agree that the defendants were "ignorant" of their responsibility under the agreement.

■ We similarly reject defendants' claim that laches should be asserted against Audit Services. While we are not certain that the doctrine is applicable to union trust fund recovery actions, we are satisfied that the facts here would not support a finding of laches in any event. The deficiencies were not discovered until the 1977 audit, and Audit Services moved swiftly to vindicate the trust's claim thereafter. There was no unreasonable delay.[2]

### C. Successorship

The district court found that Rolfson Construction was liable for the unpaid contributions from the time that it took over the construction business from Rolfson Company. The court noted that Marcus had signed the 1975 agreement, but only as an agent of Rolfson Company, and so rested its holding on the proposition that the construction company had become a party to the agreement "by operation of law . . ."

According to the district court's findings, an outsider could not have distinguished the construction business operated by Marcus as Rolfson Construction from the business operated by Marselius as Rolfson Company. Nothing in Rolfson Construction's subsequent contact with either the union or the trusts indicated that the construction business had become a separate entity from Rolfson Company. The court also found a substantial continuity in the nature of the business, the physical location, and the work force. The court reasoned that Marcus continued to operate under the terms of the agreement because he "did not want to rock

---

2. Defendants' argument that notice of noncompliance with the terms of the agreements was necessary is without merit. The only references to "notice of noncompliance" contained in any of the agreements appear in Article III,

carried over through each of the agreements. Article III is the union security clause, and the "noncompliance" contemplated there involves the use of nonunion employees.

the labor boat," and concluded that he was "estopped" from denying the obligation of Rolfson Construction to the trusts.

■ The parties have briefed this point as a question of Rolfson Construction's liability as a "successor" to Rolfson Company, and we concur that the issue is properly framed as such. The doctrine of successorship, as developed in federal labor law, involves the question of an employer's obligation to its labor force inherited from a predecessor employer. It has now been long settled that although a successor employer may be bound to recognize and bargain with a union with whom its predecessor had a contract, it is not bound by the substantive provisions of a collective bargaining agreement negotiated by its predecessor, but not agreed to or assumed by it. *See N. L. R. B. v. Burns Security Services*, 406 U.S. 272, 284, 92 S.Ct. 1571, 1580, 32 L.Ed.2d 61 (1972); *see also, e. g., N.L.R.B. v. Edjo, Inc.*, 631 F.2d 604 (9th Cir. 1980); *Hospital & Institutional Workers Local 250 v. Pasatiempo Development Corp.*, 627 F.2d 1011 (9th Cir. 1980); *Bellingham Frozen Foods, Inc. v. N. L. R. B.*, 626 F.2d 674 (9th Cir. 1980); *Bartenders & Culinary Workers v. Howard Johnson Co.*, 535 F.2d 1160 (9th Cir. 1976). As the *Burns* decision noted, employers may decide to honor provisions of collective bargaining agreements, even though they have not signed the agreements:

> "In many cases, of course, successor employers will find it advantageous not only to recognize and bargain with the union but also to observe the pre-existing contract rather than to face uncertainty and turmoil. Also, in a variety of circumstances involving a merger, stock acquisition, reorganization, or assets purchase, the Board might properly find as a matter of fact that the successor had assumed the obligations under the old contract."

406 U.S. at 291, 92 S.Ct. at 1584.

■ We believe that Rolfson Construction was a "successor" to Rolfson Company for the purposes of the collective bargaining agreement. The single most important fac-

tor here is that Rolfson Construction employed substantially the same work force as Rolfson Company. Continuity of work force is a major consideration in successorship cases. *See Howard Johnson Co. v. Hotel Employees*, 417 U.S. 249, 94 S.Ct. 2236, 41 L.Ed.2d 46 (1974). Though the record is not crystal clear on the point, there is no dispute that Rolfson Construction retained most or all of Rolfson Company's contingent of carpenters. It is also clear that the type of work performed by Rolfson Construction is substantially similar to that performed by Rolfson Company. Many of the tools used by Rolfson Construction had been used by Rolfson Company. Rolfson Construction has maintained close contact with Rolfson Company both in the use of its physical plant and in some cases its clerical personnel. Where the identity of successor and predecessor is as complete as in this case, we are compelled to find that a successorship relationship has been established.

■ We also are convinced that Rolfson Construction here "assumed" the obligations of the collective bargaining agreement, or, at the very least, assumed the obligation to make contributions to the trusts. The facts of this case fit the model suggested in *Burns* of a successor employer who chooses to honor the terms of a collective bargaining agreement because it finds labor stability at the outset preferable to the process of negotiation. Rolfson Construction behaved as if it had signed the agreement, and, we must infer, received the corresponding benefit of an established, stable, and reliable work force. It continued Rolfson Company's policy of making trust fund contributions on behalf of union workers, and of not making such payments on behalf of nonunion employees. This is not a case wherein a union has asserted that an employer is bound by an existing agreement simply because it has purchased the assets and goodwill of a signatory entity. *See Kallmann v. N. L. R. B.*, 640 F.2d 1094 (9th Cir. 1981). It is, rather, a case wherein the employer has impliedly assented to and assumed the obligations of an agree-

ment by a consistent pattern of conduct conforming to the terms of the agreement.

In applying the successorship doctrine here, we heed the admonition of the Supreme Court in *Howard Johnson Co. v. Hotel Employees, supra,* that "... in light of the difficulty of the successorship question, the myriad factual circumstances and legal contexts in which it can arise, and the absence of congressional guidance as to its resolution, emphasis on the facts of each case as it arises is especially appropriate." 417 U.S. at 256, 94 S.Ct. at 2240. Our holding here is therefore, conditioned on the unique facts of the present case.

### D. *Liability of Marcus Rolfson individually*

The district court found that Marcus should be held individually liable for contributions due from Rolfson Construction because the corporation had become a "mere shell" under Montana law. Marcus is the sole shareholder in Rolfson Construction, and there was evidence that he has consistently disregarded such corporate formalities as shareholders' or directors' meetings, and also that he has commingled his assets with those of the corporation. In piercing the corporate veil of Rolfson Construction, the district court relied on Montana law as expressed in *Stromberg v. Seaton Ranch Company,* 160 Mont. 293, 502 P.2d 41 (1972). In *Stromberg,* the Montana Supreme Court found a sole shareholder who owned the entire beneficial interest in a close corporation personally liable for the payment of a real estate broker's commission due from the corporation.

■ While our standard of review prevents us from disturbing a district judge's interpretation of the law of the state in which he or she sits unless it is "clearly wrong," *see Gee v. Tenneco,* 615 F.2d 857, 861 (9th Cir. 1980), we hold here that the district court did not apply the proper legal standard.[3] We held in *Seymour v. Hull & Moreland Engineering,* 605 F.2d 1105 (9th Cir. 1979), that in resolving questions regarding disregard of corporate entity in actions to recover fringe benefit fund payments, we look primarily to federal law. In *Seymour,* we isolated three factors which are of primary importance in this inquiry: (1) the amount of respect given to the separate identity of the corporation by its shareholders, (2) the degree of injustice visited on the litigants by recognition of the corporate entity, and (3) the fraudulent intent of the incorporators.

■ The district court correctly concluded that Marcus has paid little respect to corporate formalities. That conclusion, however, does not end the analysis. The court did not address the other elements of the federal piercing doctrine.[4] While the evidence showed that Marcus was somewhat careless in failing to observe the strict formalities of the corporate form, it fell far short of demonstrating any deliberate misuse of the corporation or any fraudulent intent in forming it. Marcus testified that he formed the corporation on the advice of his accountant and attorney in 1975 when Marselius decided to drop out of the construction business. His conduct thereafter betrays no hint of fraud. More importantly, perhaps, there is no evidence that injustice will result if Marcus is not held personally liable. He testified that Rolfson Construction has been involved in projects worth several hundred thousand dollars, and that the corporation possessed, at time of trial, assets having a value of at least $40,000. The corporation thus appears to be solvent and capable of paying the $15,-000 plus judgment levied here. In the absence of evidence of fraud or injustice, we are constrained to hold that the trial court erred as a matter of law in holding Marcus Rolfson personally liable for the judgment assessed against Rolfson Construction. We reverse on this point.

---

**3.** In view of our holding, we do not pass on the question of whether the district judge's interpretation of Montana requirements for piercing the corporate veil was clearly wrong.

**4.** In fairness to the district judge, we note that he did not have the benefit of our *Seymour* decision when he decided this case.

## IV. *CONCLUSION*

The judgment of the district court is AFFIRMED in part and REVERSED in part.