**TRUSTEES FOR ALASKA LABORERS et al., Plaintiffs,**

v.

**CONSTRUCTIONS AND RIGGING, INC., et al., Defendants.**

**No. A84–066 CIV.**

United States District Court, D. Alaska.

Oct. 6, 1986.

Jerald M. Reichlin, Jermain, Dunnagan & Owens, Anchorage, Alaska, for plaintiffs.

Brooks W. Chandler, Lane, Powell, Barker & Hicks, Anchorage, Alaska, for defendants.

KLEINFELD, District Judge.

Several union fringe benefit trusts filed this action "for specific performance and injunctive relief," claiming contributions from an employer. Damages for omitted contributions, liquidated damages, interest, and accounting costs are sought for August 1981 through October 1983.

This court has jurisdiction under 29 U.S.C. sec. 1132 (ERISA) and 29 U.S.C. sec. 186 (Taft-Hartley Act).

Plaintiffs have moved for summary judgment. The court must determine whether, viewing the evidence in a light most favorable to defendants, there is no genuine issue of material fact, and plaintiffs are entitled to judgment as a matter of law. *Friends of Endangered Species, Inc. v. Jantzen,* 760 F.2d 976 (9th Cir.1985).

The central issue is whether the employer must make contributions to the union fringe benefit funds based upon hours worked by non-union employees.

The employer's president states in his affidavit that, in order to comply with a local hire requirement in his company's contract with the North Slope Borough, the company hired several non-union personnel, to whom the union refused membership. [deft. ex. I] To comply with the Davis-Bacon Act, the employer paid union wages plus the cash equivalent of union fringe benefits to these non-union employees. [pltf. ex. O, Caley dep. 25, 29] The employer's statement of genuine issues of fact does not put at issue the trustees' assertion that the fringe benefit amounts were not paid to the union trust funds. The trustees for the union funds apparently concede that the non-union employees will receive no benefit from contributions measured by their hours to the union fringe benefit funds.

A union trust fund contribution case raises two kinds of questions. First, what could the union and employer lawfully agree to, within the constraints of the statutes? Second, what did they agree to? The first affects the second, since the agreement should be construed to be law-

ful wherever possible. The two constraining statutes are ERISA and the Taft-Hartley Act, cited above. ERISA puts the force of the federal government behind an employer's contractual obligation to contribute to union trust funds. The Taft-Hartley Act limits the kinds of payments which an employer is allowed to make to a union or union trust fund. It prohibits payments to unions, union representatives, and union trust funds in a wide variety of circumstances, in order to prevent corruption and regulate union trust funds.

The obvious sticking point for the employer in this case, aside from the money, is that the employees at issue are not union, were allegedly not allowed by the union to join, and will not benefit from trust fund contributions, but did benefit from the cash in lieu of trust fund contributions paid directly to them by the employer. It grates on one's sense of fairness that the union should be able to take the money from the employer and employees situated like these, and put it into a fund benefitting neither.

Discussion must start with *Walsh v. Schlecht*, 429 U.S. 401, 97 S.Ct. 679, 50 L.Ed.2d 641 (1977), though the parties failed to cite this decision. The United States Supreme Court held that a contract requiring contributions measured by hours of non-union employees of a non-union subcontractor did not violate the Taft-Hartley Act, 29 U.S.C. § 186(a)(1), even though the employees would not benefit. The employer had paid the cash equivalent of the contributions to the employees, as in the case at bar.

*Walsh* held that federal principles of contract law construction, not state law principles, apply. id. 407, 97 S.Ct. at 684. The federal principle of construction used in *Walsh* is that "ambiguously worded contracts should not be interpreted to render them illegal and unenforceable." id. 408, 97 S.Ct. at 685. The court construed the "inartfully worded" contract to require contributions "measured ... by hours worked" by non-union employees. So construed, the contract did not violate the Taft-Hartley proscription against payments "on behalf of" non-union employees.

The dissent in *Walsh* says "[c]ommon sense tells us that petitioner had no intention of making contributions with respect to employees who could never benefit." id. 412, 97 S.Ct. at 685. The dissent would have found the claimed contributions to be violative of the statute because the employees of the nonunion subcontractor could not be beneficiaries of the trust funds. The dissent characterizes the majority result as creating a "penalty for employing a nonsignatory subcontractor." id. 412, 97 S.Ct. at 685.

The Ninth Circuit decided in *Audit Services, Inc. v. Rolfson*, 641 F.2d 757 (9th Cir.1981) that the agreements at issue "unambiguously" required payment on behalf of non-union as well as union employees, so extrinsic evidence of the meaning of the agreements was properly rejected under the parole evidence rule. In *Audit Services*, the non-union employees had also received cash payments equivalent to what would have been contributed to the trust funds had they been union members.

In *Brogan v. Swanson Painting Co.*, 682 F.2d 807 (9th Cir.1982), summary judgment for the contractor was reversed, where a non-union subcontractor had paid cash equivalents of the fringe benefit amounts to employees, to comply with the Davis-Bacon Act. The Ninth Circuit held that the cash payments to the employees did not excuse breach of the contract to pay these amounts to the union trust funds. The meaning of the contract was not disputed.

*Todd v. Benal Concrete Const. Co.*, 710 F.2d 581 (9th Cir.1983), cert. denied 465 U.S. 1022, 104 S.Ct. 1274, 79 L.Ed.2d 679 (1984), goes the other way. The employer hired owner-operators of trenching equipment as independent contractors on the basis of number of feet trenched. The contract with the union defined such owner operators as employees for purposes of the fringe benefit plans, and indisputably provided that contributions should be made. The Ninth Circuit held that the union con-

tract violated the Taft-Hartley Act, so the payments did not have to and could not lawfully be made; the union contract could not transform the owner-operators into employees.

Under these authorities, the question before this court is whether the applicable agreement requires the employer to contribute to the trust funds amounts measured by the employer's compensation to non-union employees. Imposition of such double payment upon the employer may be unfair, and it may discourage local hire, but *Walsh* controls on those issues. The unfairness and policy aspect cannot prevent summary judgment.

Both parties have submitted a printed document entitled "Alaska Agreement" for 1981–1984 of the Alaska State District Council of Laborers and the Alaska Chapter of the Associated General Contractors. The employers recognize the union as representative of "all their employees ... within the jurisdiction of the union." [pltf. ex. A, p. 2]

If the union refusal to accept the local hire personnel as employees is material, the materiality would be under the union shop provision. It provides in relevant part:

> Employees hired ... subsequent to the signing of this Agreement shall be required to become and remain members of the Union in good standing within fourteen (14) days of hire.... The Union agrees to defend any charge or suit made or brought against any Employers as the result of the dismissal or termination of any employees pursuant to the provisions of this section and to hold the Employer harmless.

Analysis of the contracts by construing the parties' intent as to non-union employees would be artificial. The parties did not contemplate non-union employees. They contemplated that all non-union personnel would become union members within fourteen days or be fired, with the union to protect the employer against claims arising out of the dismissals. I do not think that the documents show any reasonable expectation that there would be a class of non-union employees, except perhaps new hires who would become union members within fourteen days.

The Agreement declares that the employers are signatories to trust agreements requiring contributions "per each compensable hour accredited to Laborers in their employ." This quoted phrase is repeated in each of the four sections of the agreement on trust funds. I think a fair construction requires that the capitalized word "Laborers" be read to mean members of the unions in the "Alaska State District Council of Laborers and its Affiliated Local Unions," designated on the cover of the document. The capitalization of the word suggests membership in the designated labor unions. Why else use a capital "L"? The document does not generally capitalize nouns.

This does not end the inquiry, however, for two reasons; first, the parties obviously contemplated that all employees would be union members within two weeks, and second, the collective bargaining agreement incorporates by reference terms of the trust agreements. The collective bargaining agreement says,

> The Employers are signatory to a Trust Agreement.... It is understood that *under the provisions thereof,* the Employer contributes ... per each compensable hour accredited to Laborers in their employ...." (emphasis added)

The term "Laborer" is not explicitly defined.

The trust agreement (deft's ex. H) defines "employee" to mean

> *all the employees, including officers, of any employer* who is required by the collective bargaining agreement to make contributions to the Fund or for whom the employer voluntarily makes the contributions to the Fund as provided by this Trust Agreement. (emphasis added)

The term "participant" is more narrowly defined, to include only

> *any person employed* by an individual employer *who is covered by a collective bargaining agreement,* or special agree-

ment, and for whom the individual employer makes or is required to make contributions to the Fund and any person who may have been so employed but is subsequently laid off, terminated, or retired. (emphasis added)

This distinction contemplates a class of persons, such as supervisors and confidential employees, who are "employees" but not "participants."

The preamble to the trust agreement says that "Employer is a party to a Collective Bargaining Agreement, or supplements thereto, requiring employer contributions of certain sums per hour *per employee* to a fund to be created and established by this Trust Agreement." (emphasis added) The preamble is in form declarative rather than imperative, and this declaration of fact in the preamble is incorrect. The collective bargaining agreement does not say what the preamble to the trust agreement alleges that it says.

The Collective Bargaining Agreement required contributions "per each compensable hour accredited *to Laborers,*" not "to *employees.*" (emphasis added) If the statement of fact in the preamble regarding the collective bargaining agreement were correct, then I would interpret the contracts to require contributions on behalf of non-"participant" employees who were not Laborers union members. *Walsh* would eliminate the Taft-Hartley problem, and the contract and *Walsh* would leave no room for judicial discretion on the basis of fairness.

The limitation of the duty to contribute to "Laborers", rather than "employees," however, in light of the carefully drawn distinction in the trust agreement between "employees" and "participants" and the factual error in the trust preamble reference to the collective bargaining agreement, gives rise to an ambiguity. The collective bargaining agreement when read alone appears to require contributions only for hours worked by union members. The trust when read alone appears to require contributions for hours worked by all employees. When read together, as they

must be by their own terms, the inconsistency of these two documents makes the combination of the two documents ambiguous.

The contractual language in the case at bar differs strikingly from the unambiguous language in *Audit Services,* "the employer will remit ... for each employee covered by this agreement," and "employee" means "any employee ... who performs work covered ... whether such Employee is Union, Non-Union....." In that case, a court could determine with certainty what the contractual language meant, and had only to decide whether such a contract was lawful. In the case at bar, I cannot determine without extrinsic evidence what the two apparently conflicting contracts, when taken together, are intended to mean as applied to the facts before me.

In adducing extrinsic evidence, the parties are in a better position than the court, because of their knowledge of the facts, to determine what may be helpful. One partly analogous circumstance may be whether trust fund contributions are made for non-union new hires during the fourteen days or less until they become union members. An issue may be whether the promise if any to make contributions on behalf of non-union employees is conditional upon the union admitting them to membership. cf. *Operating Engineers Pension Trust et al. v. Cecil Backhoe Service, Inc.,* 795 F.2d 1501 (9th Cir. Aug. 7, 1986). Decision on the accounting and attorneys' fees issue would be premature in light of the need for trial.

Defendant employer concedes the obligation to contribution on behalf of one of the employees at pg. 8, fn. 9 of its opposition. The parties are directed to lodge a stipulated form of interlocutory order regarding this amount, or if they cannot agree, each may lodge a form of order and memorandum within thirty days of the date of this decision.

Plaintiffs' motion for summary judgment is denied, except with regard to the uncontested issue.

The trial date will be set at a scheduling conference.