**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TRUSTEES OF THE SOUTHERN
CALIFORNIA IBEW-NECA PENSION
TRUST FUND,
            *Plaintiff-Appellant,*

v.

HERMAN FLORES, d/b/a BHF
Electrical Contractors,
            *Defendant-Appellee.*

No. 06-55812

D.C. No.
CV-04-10011-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence Marie Cooper, District Judge, Presiding

Argued and Submitted
February 5, 2008—Pasadena, California

Filed March 27, 2008

Before: Alfred T. Goodwin, Diarmuid F. O'Scannlain, and
William A. Fletcher, Circuit Judges.

Opinion by Judge Goodwin

## COUNSEL

J. David Sackman, Reich, Adell, Crost & Cvitan, Los Angeles, California, for the plaintiff-appellant.

Marla B. Hendrickson, Tustin, California, for the defendant-appellee.

## OPINION

GOODWIN, Circuit Judge:

The Trustees of the Southern California IBEW-NECA Pension Trust Fund ("Trustees") appeal the district court's judgment against them in their action to collect delinquent trust fund contributions from employer Herman Flores. The Trustees contend that the district court erred by holding that the term "covered employees" in the relevant collective bargaining agreements is ambiguous and by considering extrinsic evidence of the parties' oral representations. We hold that the collective bargaining agreements require Flores to make benefit contributions for all electrical workers engaged in project work. For this reason, we reverse and remand for further proceedings.

## BACKGROUND

In late August 2003, the Los Angeles Unified School District awarded a construction contract to general contractor

DJM/Borbon for the Commonwealth Avenue and Hoover Elementary School Safety and Technology Upgrades Project. Flores, an individual doing business as BHF Electrical Contractors ("BHF"), worked as an electrical subcontractor on the project.

On October 1, 2003, Flores signed a Subscription Agreement with Local Union 11 of the International Brotherhood of Electrical Workers in which he agreed to make pension trust fund contributions on behalf of his employees. In addition to the Subscription Agreement, Flores' obligation to make trust fund contributions was regulated by a Project Stabilization Agreement ("PSA"), the Local Union 11 Inside Wiremen's Agreement ("IWA") and other trust agreements.

Flores began work on the project in October 2003. Sections 4.6 and 4.8 of the PSA obligated Flores to hire all project workers, excluding his core employees, from the union's referral system, unless the referral system did not fulfill Flores' request within forty-eight hours. In October and November 2003, Flores made several calls to union officials, requesting union workers. The union did not refer workers until December 8, 2003. In the meantime, Flores used his own workforce of nonunion employees for project work.

Flores made no contributions to the pension trust fund on behalf of his employees before December 8, 2003. The Trustees later conducted an audit of BHF by comparing the employer's monthly payroll reports with its certified payroll. The audit discovered unpaid contributions for project work performed before December 8, 2003, by electricians other than Flores himself.

The Trustees filed this action against Flores in federal district court to collect delinquent trust fund contributions under section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), and section 502(e)(1) of the Employee

Retirement Income Security Act, 29 U.S.C. § 1132(e)(1). The district court conducted a three-day bench trial.

On March 13, 2006, the district court entered judgment in favor of Flores. The court held that the PSA is ambiguous because "it never defines the term 'covered workers' and never expressly requires contributions for nonunion workers." After considering parol evidence, the district court concluded that "defendant's Subscription Agreement was not in effect and his obligations under the PSA did not arise until December 8, 2003."

On May 10, 2006, the district court denied the Trustees' motion to alter or amend the judgment. This appeal followed.

## STANDARD OF REVIEW

We review the interpretation of contract provisions de novo. *Operating Eng'rs Pension Trusts v. B & E Backhoe, Inc.*, 911 F.2d 1347, 1351 (9th Cir. 1990) (citing *Kemmis v. McGoldrick*, 706 F.2d 993, 996 (9th Cir. 1983)).

## DISCUSSION

The Trustees contend that the district court erred by holding that the term "covered employees" is ambiguous in the PSA. They argue that the PSA's language, structure, and purpose unambiguously require Flores to pay benefit contributions for electrical workers engaged in project work, including the nonunion workers he employed prior to December 8, 2003, and after accepting the contract. We agree.

[1] Written terms are ambiguous only if multiple reasonable interpretations exist. 11 Samuel Williston & Richard A. Lord, *A Treatise on the Law of Contracts* § 30:4 (4th ed. 1999). We interpret written terms in the context of the entire agreement's language, structure, and stated purpose. *See Huber, Hunt & Nichols, Inc. v. United Ass'n of Journeymen*

*& Apprentices of the Plumbing & Pipefitting Indus., Local 38*, 282 F.3d 746, 752 (9th Cir. 2002). Litigants cannot isolate terms of a collective bargaining agreement in order to create an ambiguity where none exists. *See id.* at 753-54.

**[2]** In this case, the collective bargaining agreements cover both union and nonunion employees. Section 3.7 of the PSA extends coverage to "construction craft employees" and provides a detailed list of excluded job classifications. For example, the PSA does not apply to "office or clerical employees, draftspersons, supervisors, timekeepers, messengers, guards, inspectors, or any other employees above the classification of general superintendent." When a collective bargaining agreement defines covered employees by job classification, it generally covers "all employees within those classifications, regardless of union membership." *Teamster's Local 348 Health & Welfare Fund v. Kohn Beverage Co.*, 749 F.2d 315, 318 (6th Cir. 1984).

**[3]** The recognition clauses in both the PSA and the IWA also show that the agreements cover all electrical workers engaged in project work, regardless of union status. "The presence in the agreement of a recognition clause designating the union as the exclusive bargaining agent for all employees indicates that fringe benefit contributions are required for both union and non-union members." *Id.* (citing *Audit Servs., Inc. v. Rolfson*, 641 F.2d 757, 761 (9th Cir. 1981); *Manning v. Wiscombe*, 498 F.2d 1311, 1313 (10th Cir. 1974)).

Section 2.06(a) of the IWA states that "[t]he employer recognizes the Union as the sole and exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment." Similarly, section 4.1 of the PSA broadly defines the relevant collective bargaining unit as "employees engaged in Project Work covered by this Agreement." The PSA defines "Project Work" as "work performed

by a Contractor or Subcontractor pursuant to the terms of a Construction Contract." These terms yield only one reasonable interpretation: the collective bargaining agreements cover all of Flores' electrical workers engaged in project work.

Flores nevertheless contends that the PSA's benefits contribution requirement did not take effect until the union processed the relevant paperwork and supplied union workers on December 8, 2003. He cites section 4.6 of the PSA, which obligates employers to "hire all covered employees, excluding core employees," through the union referral system. He also relies on section 4.8 of the PSA, which states:

> In the event that any Union's registration and referral system does not fulfill the requirements for specific classifications of covered employees requested by any Contractor within forty-eight (48) hours (excluding Saturday, Sunday and holidays), that Contractor may use employment sources other than Union registration and referral services and may employ applicants from any other available source.

Flores argues that under these provisions his obligation to make trust fund contributions was conditioned upon actual referral of union workers.

[4] The agreements contain no such condition. Sections 4.6 and 4.8 of the PSA do not limit "covered employees" to those supplied by the union. Rather, these provisions establish the employer's separate obligation to hire employees through the union referral system unless that system does not supply workers in a timely manner. Neither PSA section 4.11, which requires employers to contribute benefits, nor the Subscription Agreement conditions the employer's obligation to make trust fund contributions upon actual referral of union workers.

[5] Flores' obligations under the PSA arose before his employees started work on the covered project in October

2003. Section 1.9 of the PSA unambiguously states: "By accepting the award of a Construction Contract covered by this Agreement, whether as a Contractor or Subcontractor, the Contractor or Subcontractor agrees to be bound by each and all of the provisions of this Agreement." Flores also agreed to be bound by these provisions when he signed the Subscription Agreement for project work on October 1, 2003.

**[6]** The collective bargaining agreements unambiguously required Flores to make benefit contributions for all electrical workers engaged in project work, including the nonunion workers he employed prior to December 8, 2003, but after accepting the contract. The district court erred by considering extrinsic evidence that contradicted these unambiguous terms. *See Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1157-58 (9th Cir. 2000) (noting that the parol evidence rule bars admission of extrinsic evidence to contradict unambiguous contract terms).

Finally, the Trustees contend that the district court erred by failing to rule on their claim that Flores owes approximately $893 in unpaid contributions for project work performed *after* December 8, 2003, by employees other than ditch-diggers and Flores himself. The district court made no findings or ruling on this issue, and the parties have not adequately briefed the question on appeal. We remand this issue to the district court for further consideration.

REVERSED and REMANDED for further proceedings. Appellant to recover costs.