**Joseph SMOOT, Plaintiff,**

v.

**MOBIL OIL CORP., Defendant.**

**Civ. A. No. 89–476–WF.**

United States District Court, D. Massachusetts.

Aug. 28, 1989.

Denzil D. McKenzie of Denzil McKenzie & Co., P.C., Cambridge, Mass., for plaintiff.

Robert M. Gault and H. Joseph Hameline of Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

WOLF, District Judge.

### I. *Summary*

This action arises from defendant Mobil Oil Corporation's attempt to terminate Joseph Smoot's franchise at 783 Blue Hill Ave., Dorchester, Massachusetts (the "Franklin Park station"). Plaintiff seeks injunctive relief under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2801–2841, to prevent defendant from terminating the Franklin Park station franchise, as well as damages arising from defendant's actions.

Defendant has requested an injunction ordering plaintiff to vacate the Franklin Park station, and filed a motion to dismiss Smoot's claims.

In addition, Gertrude Young, who claimed to have loaned money to Smoot, moved to intervene as of right pursuant to Fed.R.Civ.P. 24(a).

The court held conferences with the parties on April 7 and June 12, 1989. All discovery in the case was completed before the hearing on the pending motions on June 28, 1989. At the June 28 hearing, the parties were given the opportunity to sub-

mit additional materials for the court's consideration. They have done so.

Because the parties each presented all available evidence in connection with the motion to dismiss, it is most appropriate to treat that request as one for summary judgment. *See* Fed.R.Civ.P. 12(b). After consideration of the parties' contentions and the evidence presented, the court concludes that Mobil is entitled to summary judgment. Accordingly, Smoot will be given until October 7, 1989 to vacate the Franklin Park station.

## II. *Facts*

Except as otherwise indicated, the following facts are undisputed.

On or about February 19, 1985, Smoot began operating the Franklin Park station pursuant to a series of retail dealer contracts and leases with Mobil. These agreements required Smoot to maintain an adequate inventory of Mobil products and to use his "best efforts" to sell Mobil products. Lease ¶ 7, Defendant's Appendix, Tab D; Retail Dealer Contract ¶ 14(B)(2), Defendant's Appendix Tab C. During the first three years of Smoot's franchise, he apparently operated a successful business. His gasoline sales were high and his related snack shop convenience store was profitable. Deposition of Joseph Smoot, Jr. at 64–65 (May 17, 1989). In 1987, for example, the gross profit for the Franklin Park station was $237,946. Smoot Dep., Exhibit 4.

Despite its profitable operation, the Franklin Park franchise was undercapitalized. Smoot Dep. at 264–65. Nevertheless, Smoot used the profits from the Franklin Park station to finance the acquisition of a second Mobil franchise at 1556 Blue Hill Avenue, Mattapan, Massachusetts (the "Mattapan station"), which he began to operate in June, 1988. Smoot Dep. at 193–98. In addition, in February, 1987, Smoot purchased commercial real estate at 302–06 Norfolk Street, Dorchester, Massachusetts that resulted in significant expenses and a negative monthly cash flow. Smoot Dep. at 207–13.

Immediately after Smoot's purchase of the Mattapan station, gasoline sales there began to plummet. Mattapan Station, Five Year Gallonage History, Defendant's Appendix, Exhibit K. After several months of subsidizing the Mattapan station with revenue from the Franklin Park station, Smoot had exhausted his cash reserves. He was then unable to pay for adequate supplies of gas at either station, and was at times without gas to sell at each station. Smoot Dep. at 197–99. Smoot acknowledges that he was out of gas at both stations on a number of occasions in the second half of 1988 and in early 1989.[1]

---

1. In the complaint and in his early submissions in this case, Smoot argued that Mobil was responsible for his precarious financial situation. The undisputed facts, however, indicate the following. At Smoot's request, during 1987, defendant apparently agreed to contract for renovations to the pumps and pavement at the Franklin Park station and for expansion of the snack shop. Plaintiff alleges that defendant assured him that the renovation and construction work would be completed within three weeks. Smoot closed the station on September 14, 1988, but alleges that the contractors did not arrive until several days later, worked intermittently over a three and one half month period, and never completed the work. He admits, however, that the pumps re-opened within four weeks. The expanded convenience store did not re-open until December 17.

During oral argument on June 28, 1989, plaintiff's counsel represented that Smoot was no longer contesting the issue whether there were valid reasons for Mobil's termination of the Franklin Park franchise and thus was abandoning the argument that his financial difficulties were caused by Mobil's construction delays. In any event, such a claim would be without merit. Even if Mobil committed to completing the work within three weeks, a one week variance in bringing the pumps back into service was not sufficient to cause plaintiff's severe financial problems. Gasoline sales constituted the vast majority of plaintiff's revenue and profits from the station. *See* Smoot Dep., Exhibit 4 (in 1987, sales of gasoline constituted 78% of gross profit). Even with the construction, Smoot's 1987 gross revenues and gross profits surpassed those of the previous year. Smoot Dep. at 46–48, Exhibit 4. In addition, one month after construction was completed, the volume of sales had returned to preconstruction levels. *See* Franklin Park Station Five Year Gallonage History, Defendant's Appendix, Exhibit J. Moreover, during the renovation period Mobil forgave Smoot's commitment to contribute $20,000 toward the renovations and gave Smoot three months of free rent at a value of $4,560. *See* Defendant's Appendix, Exhibit F, Affidavit of Lawrence K. Eiben, District Manager, Mobil Oil Corporation ¶ 11 (March 24, 1989).

On October 24 and November 22, 1988, Mobil sent letters to Smoot advising him of its growing concern over his failure to purchase and sell Mobil products and to keep both stations open as required by the lease and dealer contracts. Defendant's Appendix, Exhibits M, N. These letters specified the many dates on which the stations were out of gas and warned that future violations of the franchise agreements would result in their termination. On December 29, 1989, Mobil sent Smoot another letter describing additional, more recent dates on which the stations were out of gas and stating that any further violation after a ten day grace period would result in termination of the franchises. Defendant's Appendix, Exhibit O.

In a January 10, 1989 letter, Mobil notified Smoot of the days in January in which the Mattapan station was out of gas, and terminated that franchise effective January 13, 1989. Smoot Dep., Exhibit 19. Apparently, Smoot relinquished control of the Mattapan station on January 13, 1989.

On January 31, 1989 Mobil wrote to Smoot again, citing Smoot's failure to have gas for sale at the Franklin Park station from January 22–25. *See* Defendant's Appendix, Exhibit P. The letter referred to the October, November and December warnings and stated:

> Although the most recent violations (and the other past violations) provide clear grounds for such termination, we have elected not to terminate your franchise at this time. ANY FURTHER VIOLATIONS, HOWEVER, WILL RESULT IN AN IMMEDIATE, IRREVOCABLE TERMINATION OR NONRENEWAL OF THE LEASE, CONTRACT AND FRANCHISE RELATIONSHIP.

*Id.*

Four days later, on February 3, 1989, Mobil sent a letter to Smoot terminating the Franklin Park franchise, effective March 3, 1989. Defendant's Appendix, Exhibit Q. In that letter Mobil stated that its decision to terminate was based in part on Smoot's violation of specific provisions of his lease by: (1) failing to maintain an adequate inventory of Mobil products to serve customers; (2) failing to operate the premises for the sale of gasoline for seven consecutive days and other unreasonable periods; and (3) failing to make his best efforts to sell Mobil products. *Id.* This letter cited January 3–12, 22–25, and 29–31, 1989 as recent dates on which there was no gas for sale at the Franklin Park station. *Id.*

Smoot does not dispute Mobil's claims that he was out of gas on the dates alleged in the various letters.

### III. *Prior Proceedings*

On March 2, 1989, plaintiff brought this action. Counts I–IV of the Complaint assert claims under the PMPA, alleging that Mobil failed to give Smoot the notice of termination of both franchises required by 15 U.S.C. §§ 2802(b)(2)(A), and (B) and 2804. Counts V–VII allege that Mobil is liable for damages due to its alleged failure to perform diligently the renovations at the Franklin Park station and to supply plaintiff with certain equipment as required by the terms of the franchise agreement. In Count VIII, plaintiff brings a claim under Mass.Gen.L. ch. 93A because of defendant's alleged negotiation with a potential successor franchisee at the Franklin Park station. Count IX, added by recent amendment, seeks damages as a result of Mobil's alleged breach of an obligation of good faith and fair dealing.

After a conference with the court concerning plaintiff's motion to preliminarily enjoin his termination, the parties entered into a Consent Order on Interim Operation of the Franchise which was adopted by the court. The Consent Order provided that Mobil would continue to supply Smoot with Mobil products on specified terms and that he could continue to operate the Franklin Park station during the pendency of this action, subject to Mobil's right to withdraw from the Consent Order on fourteen days notice and Smoot's right to renew his request for a preliminary injunction.

The parties then engaged in complete discovery concerning the merits of this case and subsequently supplemented their initial memoranda and evidentiary submis-

sions. A hearing was held on June 28, 1989. At that time Young's motion to intervene was denied, but Young's counsel was allowed to participate as *amicus curiae*. The reasons for this denial are explained in this Memorandum.

At the June 28, 1989 hearing Smoot's counsel represented that plaintiff did not wish to maintain his claims concerning Mobil's alleged failure to renovate promptly the Franklin Park station. Thus, Counts V and VIII of the Complaint have, in effect, been withdrawn.[2] In addition, Smoot's counsel acknowledged that Smoot's undisputed failure to have gas to sell at the Franklin Park station would have been a valid reason to terminate his franchise. Smoot's counsel represented, however, that two issues remained to be decided: (1) whether Mobil had given Smoot the legally required notice concerning the Franklin Park station; and (2) whether Mobil had an obligation to deal with Smoot in good faith concerning the termination and, if so, whether terminating the franchise on February 3 after stating on January 31 that Smoot would be given one more chance constituted bad faith.

As indicated earlier, there are no facts which are material to the foregoing questions in dispute and Mobil is entitled to judgment as a matter of law on each of them.

## IV. *Conclusions of Law*

### A. Summary Judgment Standard

The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56(c) provides that the court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In addition, "the court must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable

to that party." *Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 928 (1st Cir.1983).

■ However, to survive a summary judgment challenge on the basis of disputed material facts, the plaintiff must produce substantial evidence, going beyond the allegations of the complaint and supporting the claimed dispute, which would require a judge or jury to resolve the conflicting versions of the truth at trial. *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). *See also Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Matsushita Electrical Industrial Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986) (opponent must "do more than simply show that there is some metaphysical doubt as to the material facts").

■ In this case it is important to recognize that in deciding motions for summary judgment, the court must make two inquiries: (1) whether the factual disputes are genuine, and (2) whether any fact genuinely in dispute is material. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* To determine if the dispute about a material fact is "genuine," the court must decide whether "the evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Id.*

### B. PMPA Notice Provisions

■ Smoot claims that Mobil failed to comply with the notice provisions of § 2804 by giving him only four weeks to vacate the Franklin Park station. In the circumstances of this case, even when the evidence is viewed in the light most favorable

---

**2.** Smoot's counsel also indicated that plaintiff was no longer maintaining his claims regarding the termination of the Mattapan station and his claims based upon Mass.Gen.L. ch. 93A.

to Smoot, the four weeks notice given to Smoot was legally sufficient. As the Court of Appeals for the First Circuit has recognized:

> The general rule under section 2804(a) is that notice of termination must be given ninety days prior to the effective date of termination. Section 2804(b)(1) provides, however, that less than ninety days notice is permitted if reasonable under the circumstances and if notice is given on the earliest date on which furnishing notice is "reasonably practicable."[3]

*Desfosses v. Wallace Energy, Inc.*, 836 F.2d 22, 28 (1st Cir.1987). "The purpose of the PMPA's notice of termination requirements is to give the dealer sufficient advance notice of the impending termination so that he can make appropriate arrangements. *Id.* at 29 (quoting *Avaramidis v. Arco Petroleum Products Co.*, 798 F.2d 12, 17 (1st Cir.1986)). Section 2804(b)(1) was included in the statute " 'to dispense with the lengthy [90 day] notice requirement where, for example, a franchisee committed serious defaults of the franchise agreement....' " *Id.* at 28 (quoting *Wisser Co. v. Mobil Oil*, 730 F.2d 54, 60 (2d Cir.1984)).

The undisputed, persistent failure of Smoot to have gas for sale at the Franklin Park station was a serious default of the franchise agreement. The fundamental purpose of any Mobil franchise is to sell Mobil products. The PMPA and the agreements between the parties recognize the importance of this. Both provide that termination is reasonable if a franchisee fails to sell gasoline for 7 consecutive days or any lesser period which in the facts and circumstances constitutes an unreasonable period of time. See PMPA § 2802(c)(9); Lease ¶¶ 5(d) and 13(a)(4)(k).

■ Smoot does not dispute the many dates between September, 1988 and February, 1989 on which Mobil asserts he had no gas to sell, including the ten consecutive days between January 3 and 12, 1989. *See* February 3, 1989 Letter. By both January 31 and February 3, 1989, Smoot had persistently failed to comply with his obligation to have Mobil gas to sell, despite many warnings that he would be terminated if he did not do so. Thus, even when the evidence is viewed in the light most favorable to plaintiff there is only one permissible inference—Mobil reasonably decided that there was an enduring problem with a fundamental aspect of its relationship with Smoot. In these circumstances it would have been unreasonable to require that problem be tolerated for another ninety days.[4] *See Smith v. Amerada Hess Corporation*, CCH Business Franchise Guide ¶ 8177 (D.N.J.1984) (denying franchisee's motion for preliminary injunction where two days notice given after station was "closed for several consecutive days with no prospect of re-opening."); *Loomis v. Gulf Oil Corporation*, 567 F.Supp. 591, 597 (M.D.Fla.1983) (five days notice for failure to pay amounts due); *California Petroleum Distributors, Inc. v. Chevron USA*, 589 F.Supp. 282, 288 (E.D.N.Y.1984) (16 days notice after four months of demands for payment).

The reasonableness of the four weeks notice provided in this case is reinforced by Mobil's conduct before and after issuing that notice. The undisputed facts indicate that Mobil had a right to terminate Smoot's Franklin Park franchise well before February 3, 1989. Yet Mobil gave Smoot numerous opportunities to comply with his statutory and contractual obligations. If ninety days notice were required in this case, Mobil and other franchisors would be encouraged to act quickly to terminate franchisees as soon as violations of important terms of their agreements occur, rather than extending opportunities for fran-

---

**3.** Smoot does not claim that the notice was not given on the earliest date reasonably practicable. He only claims he was entitled to ninety days notice.

**4.** It should be recognized that a franchisee does not have a right to cure its default after receiving a notice of termination. The termination period is only intended to provide the franchisee a period reasonable under the circumstances to vacate the premises. *Desfosses*, 836 F.2d at 28. Thus, the prospect of a possible infusion of additional cash from Young, who had allegedly previously furnished funds to Smoot, is not relevant.

chisees to improve their performance. This would be inconsistent with the PMPA's "core purpose of preserving the franchise relationship." *California Petroleum Distributors, Inc.*, 589 F.Supp. at 288.

The conclusion that four weeks notice was reasonable in this case is reinforced by Mobil's conduct and other events since the February 3, 1989 termination notice. Smoot had the benefit of the four weeks notice Mobil provided before filing this suit on March 2, 1989. Then, responding in part to encouragement by this court, Mobil agreed to allow Smoot to continue to operate the Franklin Park station while the merits of this action were fully explored. In addition, Smoot will now get about 45 more days to vacate the premises. Thus, he will have continued to operate the Franklin Park station for six months after Mobil reasonably required his departure. While the court does not mean to suggest that a franchisor's reasonable post-termination or post-litigation conduct can properly cure legally insufficient notice, Mobil's conduct in this case provides equitable support for the relief to which it is in any event entitled. *See Desfosses*, 836 F.2d at 29 ("Here the parties allowed Desfosses to continue operating the station pending the outcome of [related] litigation. Desfosses remained at the station for 100 days ... Under the circumstances, [defendant] complied with both the spirit and the letter of section 2804 when it notified Desfosses of termination.").

## C. Good Faith

■ Smoot also argues that the termination of the Franklin Park station should be invalidated because in view of the January 31, 1989 letter stating he would be given one more chance to comply with his obligations, the February 3, 1989 letter terminating the franchise constitutes bad faith conduct proscribed by the PMPA. This argument, however, is unavailing. Where, as here, a franchisor has a valid reason to terminate a franchise under § 2802(b)(2), the court is not permitted to consider the reasons for the decision to exercise that right.

As Smoot correctly notes, the PMPA *expressly* imposes an obligation of good faith on franchisors in four respects: termination due to withdrawal from the marketing territory, § 2802(b)(2)(E); termination due to failure to agree on changes or additions to franchise agreements, § 2802(b)(3)(A)(i); termination for economic reasons related to the site itself, § 2802(b)(3)(D); and termination due to the franchisor's loss of the right to grant the use of its trademark. § 2802(c)(6). None of these four provisions apply to this case.

■ In contrast to the foregoing four provisions, § 2802(b)(2), which is the basis for the termination of the Franklin Park station, does not expressly impose on a franchisor an obligation to act in good faith if the facts indicate it has grounds to terminate.[5] Nevertheless, Smoot contends that in view of the fact that the PMPA was intended to redress a disparity in bargaining power between franchisors and franchisees, and because of the four specific references to a requirement of good faith in other sections of the statute, the court

---

5. Section 2802(b)(2) provides in pertinent part:
(A) A failure by the franchisee to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship; if the franchisor first acquires actual or constructive knowledge of such failure—
(i) not more than 120 days prior to the date on which notification of termination or renewal is given, if notification is given pursuant to Section 2804(a) of this title; or
(ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to Section 2804(b)(1) of this title.

(B) A failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise; if—
(i) the franchisee was apprised by the franchisor in writing of such failure and was afforded a reasonable opportunity to exert good faith efforts to carry out such provisions; and
(ii) such failure thereafter continued within the period which began not more than 180 days before the date of notification of termination or nonrenewal was given pursuant to Section 2804 of this title.

should infer that § 2802(b)(2) includes a duty of good faith and find it violated here.

Smoot's argument, however, is without merit. As the Court of Appeals for the First Circuit has stated:

> While "the [PMPA] must be given a liberal construction consistent with its overriding purpose to protect franchisees" *Brach v. Amoco Oil,* 677 F.2d 1213, 1221 (7th Cir.1982), we must also bear in mind that it constituted a diminution of prior rights of franchisors and thus should not be extended beyond the Act's language and purpose." *Russo v. Texaco, Inc.,* 630 F.Supp. 682, 687 (E.D.N.Y.), *aff'd,* 808 F.2d 221 (2d Cir.1986).

*Desfosses,* 836 F.2d 25–26.

In this case, the language of the PMPA demonstrates that Congress was aware that it might be desirable to impose a duty of good faith in certain areas and knew how to require it expressly when it deemed such a duty appropriate. " 'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)). This presumption and the disparate language of the PMPA indicate that in this case the court may not properly imply a duty of good faith in addition to the express requirements of § 2802(b)(2). *See W & S Inc. v. Atlantic Richfield,* (N.D.Cal.

1984) CCH Bus. Franchise Guide ¶ 8207 at 14,594.

Although it is not the function or intention of this court to comment on the wisdom of distinctions drawn in the statute, it is appropriate to note that a case relied upon by Smoot provides a logical explanation for Congress' evident judgment that a good faith requirement was appropriate in connection with some provisions of the PMPA, but not with regard to § 2802(b)(2). As the court explained in *Crown Central Petroleum Corp. v. Waldman,* 515 F.Supp. 477, 485 (M.D.Pa.1981), *aff'd without op.,* 676 F.2d 684 (3rd Cir. 1982):

> When termination is predicated on actions by the franchisee, and not by the franchisor, the need to avoid sham justifications for the franchisor's decisions to terminate the franchise is drastically reduced. The franchisee's conduct can be objectively measured against the requirements of 15 U.S.C. § 2802(b)(2).

Accordingly, the court concludes that Mobil's good faith in terminating Smoot's franchise is not a material fact and any evidence relating to Mobil's motive is irrelevant.[6]

### D. Estoppel and Waiver

Although at the June 28, 1989 hearing Smoot's counsel represented that he was not relying on the doctrines of waiver and estoppel in seeking to invalidate the termination of the Franklin Park station, the court has considered their possible applicability in view of the January 31, 1989 letter.

---

**6.** In the interest of completeness, however, the court notes that even if the issue of Mobil's good faith were relevant, the evidence would be insufficient to put Mobil's motives in dispute. Bad faith:

> is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; it is different from the negative idea of negligence in that it contemplates a frame of mind affirmatively operating with furtive design or ill will.

Black's Law Dictionary 127 (5th ed. 1979).

Plaintiff's claim of bad faith relies upon the January 31 and February 3, 1989 letters. The first letter warned Smoot that additional violations of the agreements governing the franchise

would result in termination. The second letter terminated his franchise based on a lack of gasoline on January 31 and earlier dates. The undisputed evidence indicates that the January 31 letter was an administrative mistake resulting from a miscommunication between Mobil's local district office and its Office of General Counsel. Deposition of Peter G. Halsey, District Manager, Mobil Oil Corp., at 58–77 (May 18, 1989). Mobil remedied its error with the February 3 letter. Such inadvertence or negligence does not constitute bad faith. Therefore, in the absence of any evidence of Mobil's alleged ill will in the record before the court, summary judgment would be appropriate on this claim even if Mobil's good faith were at issue.

Neither doctrine would provide a basis for a meritorious claim in this case.

To prevail on an estoppel claim, the specific elements that must be pleaded and proven are the following:

"(1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission."

*Cellucci v. Sun Oil Company,* 2 Mass. App.Ct. 722, 728, 320 N.E.2d 919 (1974) (quoting *Greenwood v. Martin's Bank, Ltd,* [1933] A.C. 51, 57), *aff'd* 368 Mass. 811, 331 N.E.2d 813 (1975); *see also Corea v. Board of Assessors of Bedford,* 384 Mass. 809, 427 N.E.2d 925 (1981).

■ In this case, there is no evidence that Smoot acted in any way in reliance upon the January 31, 1989 letter, let alone suffered any detriment as a result of such action. Smoot testified that between January 31 and February 3, 1989 he did nothing different from what he had done during the previous weeks. Smoot Dep. at 254. From late 1988 into early 1989, Smoot attempted to secure loans. Smoot Dep. at 254–56; Affidavit of Harry D. McCrensky, President, Letter–Men, Inc. Loan Brokerage Firm, ¶¶ 3–12 (June 6, 1989). There is, however, no evidence suggesting that the January 31 letter affected his conduct in this regard or that he was in any way harmed by any steps he might have taken after receiving the January 31 letter.

Waiver is the intentional relinquishment of a known right. *Midwest Petroleum Co. v. American Petrofina, Inc.,* 603 F.Supp. 1099, 1114 (E.D.Mo.1985). In order to find such an intentional relinquishment, "there must be a clear, unequivocal and decisive act implying the intent and the implication must be so consistent with an intention to waive that no other reasonable explanation is possible." *Id. See also Aoude v. Mobil Oil Corp.,* 862 F.2d 890, 893 (1st Cir.1988) (to establish waiver, franchisee must show "clear, decisive and unequivocal conduct" waiving franchisor's rights).

■ The evidence does not permit the inference that the January 31, 1989 letter waived Mobil's right to terminate Smoot's Franklin Park franchise. Rather, the letter reiterated the violations described in earlier letters; cited more recent violations; said that such violations "provide clear grounds for termination"; but said Mobil had "elected not to terminate [the] franchise *at this time*" (emphasis added). Thus, the letter could not properly be construed as an unambiguous expression of intent to relinquish the right to terminate; the clear import of the letter is exactly the opposite.

E. Mass.Gen.L. ch. 93A Claim

Although Smoot's counsel represented at the June 28, 1989 hearing that plaintiff was no longer seeking relief under Mass.Gen.L. ch. 93A, the court has considered the viability of such a claim. Count VIII of the amended complaint alleges that prior to terminating Smoot, Mobil negotiated with a potential successor franchisee to operate the Franklin Park station and asserts that this constituted an unfair and deceptive business practice in violation of Mass. Gen.L. ch. 93A. Complaint ¶ 70.

■ Any possible Mass.Gen.L. ch. 93A claim, however, is preempted by the PMPA, which states, in part:

To the extent that any provision of this subchapter applies to the termination (or the furnishing of notification with respect thereto) of any franchise, or to the nonrenewal (or the furnishing of notification with respect thereto) of any franchise relationship, *no State or any political subdivision thereof may adopt, enforce,* or continue in effect any provision of *any law or regulation* (including any remedy or penalty applicable to any violation thereof) *with respect to termination* (or the furnishing of notification with respect thereto) of any such franchise or to the nonrenewal (or the furnishing of notification with respect thereto) of any such franchise relationship *unless such provision of such law or regu-*

*lation is the same as the applicable provision of this title.*

15 U.S.C. § 2806(a) (emphasis added). The Court of Appeals for the First Circuit has addressed this provision, stating:

> In the PMPA, Congress expressly set out the preemptive scope of that legislation: it stated that no state or local entity could adopt any provision regarding the termination or non-renewal of the franchise.... Thus ... the only grounds on which a franchisee can contest the termination or non-renewal of a franchise would be those set out by the PMPA.

*Esso Standard Oil Co. v. Department of Consumer Affairs,* 793 F.2d 431, 434 (1st Cir.1986). *See also Continental Enterprises v. American Oil Co., Inc.,* 808 F.2d 24, 27–28 (8th Cir.1986); *Consumers Petroleum Co. v. Texaco, Inc.,* 804 F.2d 907, 915 (6th Cir.1986). Therefore, if it is assumed that Mass.Gen.L. ch. 93A would make it an unfair practice for a franchisor to negotiate with a potential successor franchisee before the existing franchisee is terminated, Mass.Gen.L. ch. 93A would be pre-empted by the PMPA.

Moreover, Smoot has failed to present any evidence that the alleged negotiations occurred. Nor has Smoot explained why in the circumstances of this case such negotiations would be "unfair ... unethical, oppressive or unscrupulous" as would be required to state a ch. 93A claim." *PMP Associations, Inc. v. Globe Newspapers Co.,* 366 Mass. 593, 596, 321 N.E.2d 915 (1965). Summary judgment would, therefore, be appropriate concerning Smoot's state law claim even if it was not preempted.

### F. Young's Motion to Intervene

As indicated earlier, Gertrude Young's motion to intervene as of right under Fed. R.Civ.P. 24(a) was denied at the June 28, 1989 hearing, but her counsel was allowed to participate in the argument, as in prior proceedings, as *amicus curiae.* The reasons for that denial are as follows.

Young sought to intervene as of right because, she alleged, she had lent Smoot money partially in return for a conditional assignment of his interest in the Franklin Park station. Young wished to assert the following claims against Mobil: a PMPA claim alleging improper termination of Smoot's franchise because of Mobil's failure to give notice to Young and provide her with an opportunity to cure Smoot's defaults (Count I); a PMPA claim alleging that Mobil failed to fulfill an obligation to purchase the Franchise Agreement as provided by Article XV of the Agreement (Count II); intentional interference with Young's contractual relationship with Smoot (Count III); and a claim for a declaratory judgment of the rights, obligations and entitlements of Smoot, Young and Mobil (Count V).

The motion to intervene of right was denied because Young did not have a legally protectable interest in the Franklin Park station and, in any event, her alleged rights were being adequately protected by Smoot. Nor was permissive intervention (which was not requested) appropriate because, among other things, consideration of Young's claims would have required analysis of her relationship with Smoot, thus complicating and unduly delaying determination of Mobil's right to relief against Smoot.

With regard to intervention of right under Fed.R.Civ.P. 24(a)(2), the Court of Appeals has said:

> To intervene of right under Rule 24(a)(2), the prospective intervenor must establish four conditions: (1) the motion was timely, (2) it has the requisite interest relating to the property or transaction which is the subject of the action, (3) the action may as a practical matter impair or impede its ability to protect that interest, and (4) its interest is not adequately represented by existing parties. *Moosehead Sanitary District v. S.G. Phillips Corp.,* 610 F.2d 49, 52 (1st Cir.1979).

*United Nuclear Corp. v. Cannon,* 696 F.2d 141, 142–43 (1st Cir.1982).

Intervention of right is unwarranted in this case because Young did not have a legally protectable interest in the franchise agreement. Professors Wright and Miller state that a proposed intervenor

must have "a direct, substantial, legally protectable interest in the proceedings." 7C C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure*, § 1908 at 271–72. Such a formulation is consistent with *Meridian Homes Corp. v. Nicholas Prassas & Co.*, 683 F.2d 201, 204 (7th Cir.1982), which is cited by Young and by Mobil. In that case, the Court of Appeals for the Seventh Circuit upheld denial of intervention in an action between the interest-holders in a real estate joint venture. The proposed intervenor held an undivided one-half share of the defendant's "rights and interests" in several real estate developments, including those at issue in the underlying action. The court noted that the proposed intervenors had a practical interest in the profits of the joint venture and, therefore, in how the profits were generated, how the joint venture was managed, and whether the joint venture would continue. The court held, however, that these were not matters in which the proposed intervenors had "a direct and substantial, and therefore legally protectable, interest." *Meridian Homes*, 683 F.2d at 204.

Similarly, in the instant case Young may have been financially affected by the termination of Smoot's Franklin Park franchise, but this did not give her a legally protectable interest within the meaning of Fed.R.Civ.P. 24(a), notwithstanding any purported assignment of the lease to her. Article XV, paragraph A of the Franchise Agreement provided that Smoot could not assign his interest in the Franklin Park station without Mobil's prior written approval, and further provided that nothing less than such written approval would be deemed to be a consent or acquiescence in an attempt to transfer or assign the lease. This limitation on a franchisee's ability to assign his lease has been deemed enforceable in this District. *See Aoude v. Mobil Oil Corporation*, C.A. No. 84–3037 (D.Mass. August 15, 1988), *aff'd*, 862 F.2d 890 (1st Cir.1988); *Mobil v. Khoury*, C.A. No. 80–1842–G (D.Mass.1980). There is no evidence that Mobil approved an assignment of the lease

of the Franklin Park station to Young. Thus, in the context of this case, Young did not have a legally protectable interest in the lease.

Finally, even if Young had a legally protectable interest in the Franklin Park franchise, that interest was adequately represented by Smoot. Where an existing party adequately represents the interest asserted by the intervenor, there is no right to intervention. *Morgan v. McDonough*, 726 F.2d 11, 14 (1st Cir.1984); *Meridian Homes Corp.*, 683 F.2d at 205. The issue in the present litigation is the validity of termination of the Franklin Park franchise. Smoot commenced the litigation seeking to enjoin that termination, and has fully litigated the relevant issues. He was personally familiar with the relevant facts. Young was not. Thus, any interest Young arguably has is co-extensive with Smoot's and adequately represented by Smoot.

Although Young did not move to intervene permissively, the court also considered whether permissive intervention pursuant to Fed.R.Civ.P. 24(b) was appropriate. Intervention may be permitted under Fed.R.Civ.P. 24(b) if the applicant's claim and the main action have common questions of law and fact. This criteria was satisfied in this case. Fed.R.Civ.P. 24(b) also provides, however, that, "In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." In this case, if Young had been allowed to intervene many factual issues relating to her dealings with Smoot would have been injected into these proceedings. Resolving them would have delayed a resolution of the merits of Mobil's claim that it had a right to the Franklin Park station as of March 3, 1989. In view of the relief requested, this delay would be "undue" and unfairly prejudice Mobil.

In view of the foregoing, and because Young's counsel was allowed to be heard as *amicus curiae* on all issues, the court deemed permissive intervention under Fed.R.Civ.P. 24(b) to be unwarranted.

## V. *Order*

For the foregoing reasons, Mobil's motion for summary judgment is hereby ALLOWED, and Smoot is hereby ORDERED to vacate the Franklin Park station by October 7, 1989.[7]

---

**7.** At the June 28, 1989, hearing, Mobil indicated that thirty days notice would be appropriate if it prevailed on its motion for summary judgment and Smoot requested sixty days notice.