Melvin L. **STEWART**, d/b/a Stewart's West Sahara Shell, Plaintiff,

v.

**SHELL OIL COMPANY**, a foreign corporation, Defendant.

Civ. No. LV 80-167 RDF.

United States District Court, D. Nevada.

June 12, 1980.

junction came on for hearing on June 10, 1980, before the Honorable Roger D. Foley, United States District Judge. The Court, having examined the pleadings, memoranda, affidavits, evidence and other papers filed by the parties and having heard the arguments of counsel, makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. Defendant Shell Oil Company ("Shell") is engaged in the manufacture, refining and distribution of petroleum products. Shell has a registered trademark and authorizes its dealers to resell its products to the motoring public under that trademark.

2. Plaintiff Stewart operates a service station located at 336 West Sahara Avenue, Las Vegas, Nevada (the "premises"), which he has leased from Shell since 1974.

3. On or about September 7, 1979, Shell entered into the most recent service station lease and dealer supply agreement ("franchise") with plaintiff, to run from February 1, 1980 through January 31, 1981. The dealer agreement provides in pertinent part:

"Shell hereby grants to Dealer the right to use Shell's identifications to identify Dealer's Station as a 'Shell' station and to identify and advertise at Dealer's Station for sale the Petroleum Products and other 'Shell' products Dealer may purchase for resale. Nothing herein contained shall obligate Dealer to make any purchases from Shell. However, Dealer shall not sell, under Shell's identifications, any products other than Shell products, or any mixture or adulteration of any of the Shell products with each other or with any other product or material. If Dealer ceases to sell the Petroleum Products or uses Shell's identifications in a manner which deceives or causes a likelihood of confusion to the motoring public, or if this Agreement terminates for any reason, Dealer shall immediately and completely discontinue the use of Shell's identifications." Article 3, sub-article 3.1.

Rogers, Monsey, Woodbury & Berggreen by Douglas G. Crosby, Las Vegas, Nev., for plaintiff.

Latham & Watkins by Wm. J. Meeske and Karen R. Leviton, Los Angeles, Cal., for defendant.

ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION; FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROGER D. FOLEY, District Judge.

Plaintiff Melvin L. Stewart's ("plaintiff" or "Stewart") Motion for Preliminary In-

4. On February 20, 1980, Shell's Territory Manager responsible for plaintiff's station, Richard Larson, was informed that non-Shell gasoline was delivered to Stewart's station and dumped into the underground tanks in which Shell gasoline was stored. The following day, Larson visited Stewart at his station and asked Stewart whether he had purchased non-Shell gasoline, mixed it with the Shell gasoline in his tanks and sold it to his customers as Shell gasoline. Stewart admitted that he had done so. Stewart stated that he engaged in such conduct because he needed additional supplies of gasoline to sell to his customers. At that time, Stewart did not state that he had informed his customers that they were purchasing non-Shell gasoline. In addition, Stewart had not "de-identified" the pumps by removing the Shell colors and/or logos before selling Shell gasoline to customers, nor was there any sign on the pumps which indicated in any way that he was selling non-Shell gasoline. Larson specifically stated to Stewart at that meeting that Stewart's actions violated Federal and State trademark laws, the federal Petroleum Marketing Practices Act and his Dealer Agreement with Shell.

5. On February 28, 1980, Larson and George Chadwick, Shell's District Manager for the Phoenix District, visited Stewart at his service station. Chadwick asked Stewart if it was true that he had purchased non-Shell gasoline, commingled it with Shell gasoline, and sold it to the public as Shell gasoline. Once again, Stewart admitted that he had done so, for the same reason that he had stated previously to Mr. Larson. Stewart at no time stated in this conversation that he had informed his customers that he was selling non-Shell gasoline. Chadwick told Stewart that this was a very serious matter to Shell and that Shell would inform Stewart soon of any action it decided to take.

6. Stewart claims that he orally informed certain of his regular commercial customers that he might be selling non-Shell gasoline and that from time to time he posted a sign on his pumps which said: "This May Not Be Shell Gasoline." The lettering on the copy of such a sign submitted to the Court was approximately one inch high. There is no evidence that Stewart ever posted a sign on his pumps when he was selling non-Shell gasoline or adulterated Shell gasoline, which sign stated "Gasoline, No Brand" as required by Section 590.040(4) of the Nevada Petroleum Products Inspection Act.

7. Shell determined that Stewart's actions constituted grounds for the termination of his Lease and Dealer Agreement. On March 7, 1980, Larson personally delivered a notice of termination to Stewart, along with the summary of the Petroleum Marketing Practices Act prepared by the Secretary of Energy.

8. Since approximately 1974, when supplies of gasoline first became scarce, Shell has not enforced the hours of operation provision of any dealer's lease during times of shortage of supply. Specifically, since October 1978 Shell has not enforced the hours of operation provision for that reason in the Phoenix District, in which plaintiff's station is located. Shell's policy has been communicated to its dealers both orally and in writing.

## CONCLUSIONS OF LAW

1. Plaintiff commingled Shell gasoline with non-Shell gasoline and sold such mixture or adulteration under Shell's trade identifications. Such conduct is a breach of material and reasonable provisions of plaintiff's lease and dealer agreement with Shell.

2. Such conduct is a violation of state law, in particular, of the Nevada Petroleum Products Inspection Act.

3. Shell's termination of plaintiff's franchise was in compliance with the notification requirements of Section 104 of the Petroleum Marketing Practices Act, 15 U.S.C. § 2804.

4. Plaintiff failed to show that there exist sufficiently serious questions going to the merits of Shell's termination of plaintiff's franchise under Sections 102(b)(2)(A), 102(b)(2)(C), 102(c)(10) and

102(c)(11) of the Petroleum Marketing Practices Act, 15 U.S.C. §§ 2802(b)(2)(A), 2802(b)(2)(C), 2802(c)(10) and 2802(c)(11), to make such questions a fair ground for litigation.

## ORDER

Based upon the above findings of fact and conclusions of law, plaintiff's Motion for Preliminary Injunction is hereby denied.