In the Matter of George R. JOYNER and Sarah M. Joyner, Joyner Oil Company, Inc., J–Mart Super Foods, Inc., Debtors.

AMOCO OIL COMPANY, A Maryland Corporation, Movant,

v.

George R. JOYNER and Sarah M. Joyner, Joyner Oil Company, Inc., and J–Mart Super Foods, Inc., Respondents.

Bankruptcy Nos. 84–50362, 84–50398 and 84–50399.

United States Bankruptcy Court, M.D. Georgia, Macon Division.

Nov. 22, 1985.

Robert R. Bergman represents respondents.

Robert O. House, Macon, represents movant.

## MEMORANDUM OPINION AND ORDER

ROBERT F. HERSHNER, JR., Bankruptcy Judge.

Before the Court is the "Motion Seeking Relief from the Automatic Stay, for Adequate Protection, for Order Directing the Assumption or Rejection of Executory Contracts and for Dismissal of Cases," which was filed by Amoco Oil Company, a Maryland Corporation, on July 19, 1985. George R. Joyner and Sarah M. Joyner, Joyner Oil Company, Inc., and J–Mart Super Foods, Inc., Respondents, filed their response to the motion on August 1, 1985. The motion came on for hearing before the Court on

August 1, 1985. When the parties rested at the August 1, 1985, hearing, the Court directed that the hearing be continued for ninety days, at which time the Court would review the progress being made in Respondents' Chapter 11 cases and then rule on Amoco's motion. The motion came on for hearing again on October 15, 1985, and was continued once again until October 29, 1985, when the hearing concluded and the record closed. The Court, having considered the entire record and the arguments of counsel, now enters this order.

Respondent Joyner Oil Company, Inc. entered into a Jobber Contract with Amoco on January 25, 1983,[1] and Amoco now seeks relief from the automatic stay provision of section 362 of the Bankruptcy Code[2] to terminate the Jobber Contract. Amoco has given the necessary written notice required by the Petroleum Marketing Practices Act to terminate the Jobber Contract.

Joyner Oil, in responding to Amoco's motion, asserts that there has been no breach of the Jobber Contract which would entitle Amoco to terminate the Jobber Contract and that, in applying section 362 of the Bankruptcy Code, the Court should not grant relief from the automatic stay to Amoco.

Joyner Oil's Chapter 11 case was filed with the Court on April 11, 1984, and to date no plan of reorganization has been filed. In response to the Court's questions at the October 29, 1985, hearing, Mr. Joyner, principal of Joyner Oil, testified that it would be six to twelve months before a plan of reorganization could be filed.

Under the terms of the Jobber Contract that Joyner Oil has with Amoco, Joyner Oil has the primary marketing responsibility for what may be described as the Warner Robins, Fort Valley, and Perry area of Middle Georgia. Because Joyner Oil has the primary marketing responsibility for

---

**1.** Amoco and Joyner Oil are also parties to an Amoco Tire, Battery and Accessory Sale Franchise Agreement and a Distributor Contract for Quaker State Motor Oils and Lubricants. Amoco also seeks to terminate these agreements.

**2.** 11 U.S.C.A. § 362 (West Supp.1985).

the area, it has the right to use the Amoco trade name, trademark, brand name, and color scheme, and the right to sell Amoco products within the area.

The first issue presented to the Court is whether Joyner Oil has violated the Jobber Contract so that Amoco is entitled to terminate the Jobber Contract.

The termination of a retail oil franchise or jobbership franchise by an oil company franchisor is governed by the Petroleum Marketing Practices Act. 15 U.S.C.A. §§ 2801–41 (West 1982). *See Halder v. Standard Oil Co.*, 642 F.2d 107 (5th Cir. April 6, 1981) (Unit B); *Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54 (2d Cir.1984). The Act is intended to provide franchisees "meaningful protections from arbitrary or discriminatory terminations and non-renewals[,]" and, at the same time, it seeks to protect "the legitimate needs of a franchisor to be able to terminate a franchise or not renew a franchise relationship based upon certain actions of the franchisee, including certain failures to comply with contractual obligations."[3]

Section 102 of the Petroleum Marketing Practices Act provides, in part:

*Definition*

(c) As used in subsection (b)(2)(C) of this section, the term "an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable" includes events such as—

. . . .

(10) willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee;

15 U.S.C.A. § 2802 (West 1982).

In this case, Joyner Oil's Jobber Contract with Amoco provides that Joyner Oil is not allowed to distribute non-Amoco fuel under the Amoco trademark. Mr. Joyner freely admits that he distributed non-Amoco fuel

through Amoco fuel pumps during the period from June 1984 to December 10, 1984. Amoco would ordinarily be entitled to terminate Joyner Oil's franchise because of this misbranding. *Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54, 56–57 (2d Cir.1984); *Haynes v. Exxon Co., U.S.A.*, 512 F.Supp. 543, 544 (E.D.Tenn.1981); *Stewart v. Shell Oil Co.*, 518 F.Supp. 6, 8 (D.Nev.1980).

Furthermore, the misbranding of fuel is regarded as a noncurable breach of the franchise relationship, and the franchisor is not required to give the franchisee a second chance prior to termination. In *Wisser Co. v. Mobil Oil Corp.*, 730 F.2d 54 (2d Cir.1984), the court held:

It is clear from the structure of the statute that Congress meant to give franchisees the right to cure for some kinds of conduct or conditions that if continued would warrant termination or nonrenewal, but did not intend to require a second chance for other kinds of conduct or conditions. See S.Rep. No. 731, 95th Cong., 2d Sess. 33–38 (1978), reprinted in 1978 U.S.Code Cong. & Ad. News 873, 891–97. While the legislative history does contemplate "[f]lexibility ... so that a franchisor may work with a franchisee in an effort to correct the situation and avoid termination ... or nonrenewal," id. at 33–34, 1978 U.S.Code Cong. & Ad.News at 892, it also recognizes that "[s]ome contractual violations, although not readily reducible to a dollar value, may be so serious as to undermine the entire relationship," id. at 18, 1978 U.S.Code Cong. & Ad.News at 876.

The misbranding alleged in this case falls into the latter category.... [W]e hold that terminations pursuant to 15 U.S.C. §§ 2802(b)(2)(A) and 2802(b)(2)(C) do not require notice and opportunity to cure before notice of termination may be given.

*Id.* at 59. *See also Di Napoli v. Exxon Corp.*, 549 F.Supp. 449 (D.N.J.1982); *Pugh*

---

**3.** S.Rep. No. 731, 95th Cong., 2d Sess. 18–19, *reprinted in* 1978 U.S.Code Cong. & Ad.News 873, 877.

*v. Mobil Oil Corp.*, 533 F.Supp. 169 (S.D. Tex.1982).

It is undisputed that Joyner Oil misbranded fuel during the period from June 1984 to December 10, 1984. Joyner Oil argues that the misbranding was justified because it resulted from the fact that Amoco, upon notification of Joyner Oil's Chapter 11 filing, withheld substantial funds due Joyner Oil from Amoco credit card sales. Joyner Oil argues that because Amoco withheld the funds, it did not have sufficient funds to purchase gasoline from Amoco and had to purchase gasoline from other sources from which it could get credit. The gasoline purchased from the other sources was distributed through Amoco pumps, which resulted in the misbranding. The question presented is whether Amoco's withholding of funds from credit card sales impacts upon the right of Amoco to terminate because of the misbranding.

"Willful," as used in section 2802(c)(10),[4] requires "a conscious, intentional, deliberate and voluntary act[,]" and it has been held that willfulness under this section is not negated by evidence of good faith on the part of the party who committed the misbranding. *Gilderhus v. Amoco Oil Co.*, 1980–1 Trade Cas. (CCH) ¶ 63,648, at 77, 495 (D.Minn.1980). Joyner Oil willfully violated its Jobber Contract, but there remains the question of whether Amoco is estopped from asserting the willful violation because of its failure to timely pay Joyner Oil on its credit card sales.

An action under the Petroleum Marketing Practices Act arises under a federal statute, and federal common law rather than state law controls on the question of whether Amoco is estopped. *Audit Services, Inc. v. Rolfson*, 641 F.2d 757, 762 (9th Cir.1981). As noted by the court in *Rolfson*, estoppel has been defined as containing the following elements:

"(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury."

641 F.2d at 762.

The former Fifth Circuit Court of Appeals[5] noted: "To make out a claim for equitable estoppel the defendants would have to demonstrate at least intentional deception through concealment or inaction ... or gross negligence amounting to constructive fraud...." *Flournoy v. Century Finance Co. (In re Henderson)*, 577 F.2d 997, 1001 (5th Cir.1978) (citations omitted).

■ The Court has carefully considered the facts and is unable to find an estoppel. Joyner Oil intentionally and voluntarily misbranded, and it is no justification to argue that the misbranding resulted from Amoco's failure to timely process credit card sales upon the filing of Joyner Oil's Chapter 11 case. The record discloses that Amoco was considering its legal options in light of Joyner Oil's bankruptcy filing. To deal properly with the delay in payments, Joyner Oil should have filed for relief with the Court. It was not proper to misbrand, which is a serious violation under the Petroleum Marketing Practices Act.

■ Having determined that Joyner Oil violated its Jobber Contract with Amoco and that Amoco is not estopped to assert the violation, the Court will now consider whether Amoco should be released from the automatic stay of the Bankruptcy Code so that it may terminate Joyner Oil's Jobber Contract.

Section 362(d) of the Bankruptcy Code provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by

---

**4.** 15 U.S.C.A. § 2802(c)(10) (West 1982).

**5.** Although this United States Bankruptcy Court sits in the Eleventh Circuit, it is bound by all decisions of the former Fifth Circuit handed down prior to the close of its business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981).

terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C.A. § 362(d) (West Supp.1985).

Respondents filed their Chapter 11 cases on April 11, 1984, and the cases therefore have been pending some nineteen months. To date, no plan has been filed, and in response to the Court's inquiry, Mr. Joyner stated that it would be six to twelve months more before any plan could be filed. The evidence discloses that if Amoco had a good, financially sound franchisee in Joyner Oil's market area, Amoco would be selling more gas with a larger share of the market.

Respondents' cases are more in the nature of liquidation than of reorganization, and the Court is persuaded that Amoco should be freed from the automatic stay so that it can terminate Joyner Oil's Jobber Contract. Respondents have had the protection of this Court for some nineteen months, and it is not equitable for the Court to require Amoco to continue doing business with Joyner Oil. Under section 362(g),[6] Respondents have the burden of proof to demonstrate that relief should not be granted, and in the Court's view, they have not carried their burden.

Accordingly; it is

ORDERED that the motion for relief from the automatic stay filed by Amoco Oil Company on July 19, 1985, is hereby granted; and it is further

ORDERED that to the extent the motion seeks other relief, the motion is denied; and it is further

6. 11 U.S.C.A. § 362(g) (West 1979).

ORDERED that Amoco Oil Company is hereby relieved from the automatic stay of the Bankruptcy Code.

SO ORDERED this 22nd day of November, 1985.