**In re Roberto QUINONES RUIZ and Dharma Rivera Christian, Debtors.**

**CARIBBEAN GULF REFINING CORP., Plaintiff/Movant**

**v.**

**Roberto QUINONES RUIZ, Dharma Rivera Christian and Robert J. Griswold, Trustee, Defendant/Respondent.**

**Bankruptcy No. B-87-01520(ESL).**

United States Bankruptcy Court,
D. Puerto Rico.

Feb. 23, 1988.

Harry Bracer Natal, Ponce, P.R., for debtors.

Maria Soledad Pinero, Ledesma, Palou & Miranda, Hato Rey, P.R., for plaintiff.

### OPINION AND ORDER

ENRIQUE S. LAMOUTTE,
Chief Judge.

This case is before the Court on the motion to lift stay filed by Caribbean Gulf

Refining Corporation (Careco) on the grounds that the contractual relations with the debtor have terminated, that if the contract is still in full force and effect it should be deemed rejected under 11 U.S.C. § 365(d)(1), (4) as the debtor has not assumed the lease within sixty (60) days from the filing of the petition and that the debtor has defaulted on the contract. The debtor has opposed the motion to lift stay alleging that arrears and default will be cured through the Chapter 13 plan, that the termination of the contract was done after the filing of the petition and, consequently, the same is null and void, and that the Chapter 13 trustee was not included as a respondent. An evidentiary hearing was held on February 13, 1988. The parties stipulated to the admittance of all the relevant documentary evidence and offered testimony to support their respective positions. After considering the evidence presented and counsels' arguments the court now enters the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

### Findings of Fact

The parties have stipulated to the following facts:

1. The debtors filed their petition under Chapter 13 of the Bankruptcy Code on July 14, 1987.

2. The termination notice (Joint Exhibit 3) was mailed on July 21, 1987.

3. The Chapter 13 plan was filed on August 14, 1987.

4. The debtors are currently operating the business.

5. The debtors did not purchase gasoline from Careco during the months of May and June 1987.

The court makes the following additional findings:

6. The contractual relations between Careco and debtor are evidenced by a Lease Contract (Exhibit 1) and a Supply Contract (Exhibit 2). The two are interdependent and cannot be separated. The contracts are in the nature of a franchise.

7. The Lease Contract provides in clause (b)(5) for the termination of the contract for intentional commingling of products. The supply contract has a similar provision in clause 7(b)(5).

8. Codebtor Roberto Quiñones admitted at the hearing that he had purchased gasoline from sources other than Careco, commingled the same in the tanks and sold it.

9. The reason for purchasing from other sources is that he needs to make a living and cannot afford the requirement imposed by Careco of purchasing a minimum of 8,000 gallons of gasoline. However, Mr. Quiñones admitted to purchasing approximately 8,000 gallons of gasoline per month directly from other Chevron dealers, notwithstanding the fact that Careco had agreed to sell in quantities of 2,000 gallons.

10. At the time of filing the bankruptcy petition debtors were five (5) months in arrears, currently owe approximately $9,467.90 (Joint Exhibit 5) and have made post petition payments.

11. Mr. Quiñones made the purchase from sources other than Careco knowing it was a default to his contract because he was in a "desperate" situation.

12. Debtors' intention of assuming the contract with Careco is found in their Chapter 13 plan wherein they provide for the curing of prepetition arrears.

### Conclusions of Law

The contract between the debtor and Careco is a "franchise" within the meaning of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801, et seq. Section 2801(1) defines franchise as follows:

"(1)(A) The term "franchise" means any contract—

(i) between a refiner and a distributor,

(ii) between a refiner and a retailer,

(iii) between a distributor and another distributor, or

(iv) between a distributor and a retailer,

under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distri-

bution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

(B) The term "franchise" includes—

(i) any contract under which a retailer or distributor (as the case may be) is authorized or permitted to occupy leased marketing premises, which premises are to be employed in connection with the sale, consignment, or distribution of motor fuel under a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such occupancy;

(ii) any contract pertaining to the supply of motor fuel which is to be sold, consigned or distributed—

(I) under a trademark owned or controlled by a refiner; or

(II) under a contract which has existed continuously since May 15, 1973, and pursuant to which, on May 15, 1983, motor fuel was sold, consigned or distributed under a trademark owned or controlled on such date by a refiner; and

(iii) the unexpired portion of any franchise, as defined by the preceding provisions of this paragraph, which is transferred or assigned as authorized by the provisions of such franchise or by any applicable provision of State law which permits such transfer or assignment without regard to any provision of the franchise."

The franchise relationship is an executory contract within the meaning of Professor Countryman's definition. *In re Anne Cara Oil Co., Inc.,* 32 B.R. 643, 647 (Bkrtcy.Mass.1983). See generally *In re Herbert,* 806 F.2d 889 (9th Cir.1986). Therefore, the provisions of 11 U.S.C. § 365(d)(1), (4) which concern leases of non-residential real property are not controlling. The legal creature before the Court is an executory contract.

■ The notice terminating the franchise was mailed after the petition and without requesting the Court for authorization through a motion to lift stay. Such notice is null and void, and without any legal effect. *Matter of Joyner,* 46 B.R. 130, 135 (Bkrtcy.M.D.Ga.1985); *In re Dan Chisholm, Inc.,* 57 B.R. 718, 719–720. (Bkrtcy.M.D.Fla.1986). Since the termination was not complete the debtors may move the Court to assume the executory contract. *Moody v. Amoco Oil,* 734 F.2d 1200, 1212 (7th Cir.1984). In order to assume the franchise the debtors must show unequivocally their intention by filing a motion to such effect. *In re BDM Corporation,* 71 B.R. 142 (Bkrtcy.N.D.Ill.1987); *In re Diamond Head Emporium,* 69 B.R. 487 (Bkrtcy.D.Hawaii 1987). To imply assumption by including the curing of prepetition arrears in a Chapter 13 plan does not suffice. A specific motion is required wherein the debtor will show that arrears are being cured and that it can provide adequate assurance of future performance. 11 U.S.C. § 365(b). *In re Harrell Oil Company,* 38 B.R. 280 (Bkrtcy.E.D.N.C. 1984). The showing has not been made.

■ In a Chapter 13 case the debtor has until the confirmation of the plan to assume an executory contract. 11 U.S.C. § 365(d)(2). See *Matter of Three Star Telecast, Inc.,* 73 B.R. 270 (Bkrtcy.D.P.R. 1987) regarding time to assume an executory contract in a Chapter 11 case. Although debtors may technically be in a position to move for the assumption of the franchise since the hearing on confirmation of the chapter 13 plan has been continued, the debtors must cure *all* defaults prior to the assumption. The facts of this case show that the debtors may be before an unsurmountable obstacle by having incurred in a noncurable default by having commingled gasoline.

■ It is settled that commingling of fuel is regarded as a noncurable breach of a franchise relationship which constitutes cause for the lifting of the automatic stay to terminate the relationship. *Matter of Joyner,* 55 B.R. 242, 46 B.R. 130 (Bkrtcy.M. D.Ga.1985). Codebtor Roberto Quiñones has admitted to having commingled gasoline. Such a default prevents the debtors

from assuming the franchise as it may not be cured. A noncurable default constitutes cause under 11 U.S.C. § 362(d)(1) to lift the stay.

Debtors have invoked the equity powers of this Court alleging that the commingling was performed due to their desperate economic condition and that they are entitled to make a living. As the Court in *In re Herbert,* supra, at page 895, stated: "While we acknowledge the bankruptcy court has authority to invoke equitable relief, we find the equities do not justify such action here." The debtors admitted to have commingled gasoline with full knowledge of its illegality. Moreover, it was also admitted that they purchased from other sources the very amount they claimed to be unable to purchase from Careco. Under such circumstances an equitable remedy is not justified.

Finally, the defense that the motion should be denied arguably for lack of joining an undispensable party is without merit. A motion to lift stay is a motion not an adversary proceeding. It is a contested matter (see Rules 4001 and 9014) which requires sufficient notice and opportunity for a hearing on all interested parties. The Chapter 13 trustee is a party in interest. However, the record shows that he was given sufficient notice and chose not to appear.

### Conclusion

In view of the foregoing, it is now

ORDERED that the motion to lift stay filed by Careco be and it is hereby granted for cause; and it is further

ORDERED that the debtors show cause, in writing, within twenty (20) days from entry of this order why the instant case should not be converted to Chapter 7.

SO ORDERED.