**In re Douglas Paul DEPPE and Patricia Ann Deppe, d/b/a Brookview Amoco, d/b/a Brookview Service Center, Debtors.**

**Bankruptcy No. 3–89–4795.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Feb. 21, 1990.

Lawrence T. Hofmann and Jonathan D. Jay, Zelle & Larson, Minneapolis, Minn., for Amoco Oil Co.

Brian F. Kidwell, O'Neill, Burke, O'Neill, Leonard & O'Brien, St. Paul, Minn., for trustee.

## ORDER GRANTING MOTION OF AMOCO OIL COMPANY FOR RELIEF FROM STAY

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came on before the Court on January 22, 1990, for hearing on

the motion of Amoco Oil Company ("Amoco") for relief from stay. Amoco appeared by its attorney, Lawrence T. Hofmann. The Chapter 7 Trustee appeared by his attorney, Brian F. Kidwell. Upon the moving and responsive documents, Amoco's supporting affidavits, and the arguments of counsel, the Court grants Amoco's motion.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

Debtors filed a voluntary petition under Chapter 7 on December 11, 1989. Prior to that filing, Douglas Deppe ("Deppe") operated a retail gasoline service station at 135 North Century Avenue, Maplewood, Minnesota, on premises owned by Amoco. He occupied the premises under lease from Amoco, and did business under Amoco's brand name under a "Dealer Supply Agreement." Both of these agreements are dated August 5, 1988; both have a three-year term, to expire on August 31, 1991.

In their Schedule B–3, Debtors scheduled as an asset a "[l]easehold interest from Amoco Oil regarding 135 North Century, Maplewood, MN 55119," assigning it a value of "unknown." They did not claim this asset as exempt. They did not schedule any other contract rights relating to their dealership. In their Schedule A–3 they note a debt to Amoco in the stated amount of $17,000.00. The Trustee acknowledges that as of the bankruptcy filing Deppe was delinquent in payment of gasoline invoices to Amoco for a period of one to two months.

Item 1.b. of Debtors' Statement of Financial Affairs states that Deppe "terminated business [at the service station] on 12/8/89." There is no evidence in the form of testimony or affidavit from Deppe as to the date on which he terminated operations. Amoco and the Trustee stipulate that, at the very least, Deppe did not open for business on the morning of December 11, 1989. Debtors' bankruptcy petition was filed at 1:32 p.m. on that day. Deppe did not reopen the station; it remained closed until shortly after December 29, 1989, when Amoco reopened the station under its own management after this Court granted it relief from stay for that limited purpose.

Under Paragraph 15 of the premises lease, "any reason and ground set forth in the Petroleum Marketing Practices Act" constitutes a ground for termination of the lease. In addition, the following circumstances, among others, constitute grounds for termination:

.    .    .    .    .

(b) Abandonment of the Premises by Lessee or failure by Lessee for any reason to operate the Premises for normal sales of motor fuel during normal business hours for seven (7) consecutive days or such lesser period which under the facts and circumstances constitutes an unreasonable period of time.

(c) Breach by Lessee of any provision of the separate Dealer Supply Agreement between the parties.

In further pertinent part, Paragraph 16 of the lease provides:

**Procedures for Termination or Nonrenewal**

(a) If Lessee shall fail to perform any of the covenants of this Lease, or if any other ground for termination or nonrenewal by Lessor shall occur, Lessor shall have the right, at Lessor's election, to terminate or non-renew this Lease and any applicable franchise relationship upon ninety (90) days (or such lesser period of notice as is reasonable in the circumstances) written notice.

(b) For purposes of the foregoing and any statute governing termination and non-renewal, all provisions hereof granting rights of termination and non-renewal to Lessor shall be construed as imposing upon Lessee an affirmative duty to take action to avoid the event which justifies Lessor's exercise of a right of termination or non-renewal, regardless of whether or not the provision is expressly stated in terms of such an affirmative duty.

Paragraph 2 of the Dealer Supply Agreement provides:

**Place of business.** This Agreement applies only to that motor fuel sales facility identified above [as "135 N. Century, St. Paul, Minnesota 55109"] . . .

Paragraph 18 of the Dealer Supply Agreement provides:

**Petroleum Marketing Practices Act.** Each party hereby expressly reserves all rights under the Petroleum Marketing Practices Act (15 U.S.C. 2801ff.). No omission of any reference herein to any specific such right shall constitute a waiver thereof.

Paragraph 24 of the premises lease contains identical language.

Paragraph 14 of the Dealer Supply Agreement provides as follows:

**Procedures for Termination or Nonrenewal**

(a) If Dealer shall fail to perform any of the covenants of this Agreement, or if any other ground for termination or nonrenewal by Amoco shall occur, Amoco shall have the right, at Amoco's election, to terminate or nonrenew this Agreement, the related lease for the Premises between Amoco and Dealer to which this Agreement pertains, and any applicable franchise relationship upon ninety (90) days' (or such lesser period of notice as is reasonable in the circumstances) written notice.

(b) For purposes of the foregoing and any statute governing termination and nonrenewal, all provisions hereof granting rights of termination and nonrenewal to Amoco shall be construed as imposing upon Dealer an affirmative duty to take action to avoid the event which justifies Amoco's exercise of a right of termination or nonrenewal, regardless of whether or not the provision is expressly stated in terms of such an affirmative duty.

Before Debtors filed for bankruptcy, Amoco did not give Deppe notice that it was terminating either agreement. Under color of a December 20, 1989 letter from its district manager to Deppe, Amoco purported to terminate the lease and "any attendant franchise relationship effective seven days from the postmark date of [that] letter." Amoco did not serve this notice, and has never served such a notice, upon Debtors' Chapter 7 Trustee.

On December 22, 1989, counsel for Amoco served and filed the present motion at bar. At the December 29, 1989 preliminary hearing on that motion, there was no appearance by either Debtors or the Chapter 7 Trustee; the only appearances were by counsel for Amoco and counsel for a scheduled unsecured creditor. At the suggestion of the creditor's counsel, the Court continued the preliminary hearing to a date after the scheduled Meeting of Creditors. It did so to allow the Trustee to inquire into the value to the estate of Debtors' rights under the leasehold and franchise relationships. Notwithstanding the continuance, the Court granted limited relief from stay to Amoco, to allow it to re-enter and reopen the station. The Court acceded to Amoco's request for this interim relief to allow Amoco to take action to revive or preserve customer goodwill associated with the station's location, so the party which ultimately gained the right to operate the station would not be harmed by the pendency of this motion. The remainder of Amoco's request for relief was deferred, without prejudice to the bankruptcy estate's assertion of the right to assume and assign the two agreements, and is at bar.

At an adjourned hearing called by the Court on February 16, 1990, counsel for the Trustee acknowledged that the bankruptcy estate had not yet made an objective communication of an intent to assume either agreement, as the Trustee had not yet been able to determine whether it was in the estate's best interests to do so. The Trustee had not moved for an extension of time to assume or reject the agreements as of that date.

## DISCUSSION

As its ultimate relief under this motion, Amoco requests an order of this Court

allowing it to serve a notice of termination of the lease and the Dealer Supply Agreement on Debtor and the Trustee, and then to enforce the rights which stem from that notice. The request raises several main and subsidiary issues.

## I. Effectiveness of December 20, 1989 Notice of Termination.

■ Upon Debtors' Chapter 7 filing, Deppe's rights as lessee and franchisee under the lease and Dealer Supply Agreement passed into the bankruptcy estate. 11 U.S.C. § 541(a). That bankruptcy filing operated as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Amoco's attempt to terminate the agreements via its district manager's December 20, 1989 letter to Deppe was an act to exercise control over property of the bankruptcy estate. Regardless of whether Amoco had actual notice of the filing, the purported termination was undertaken in violation of the automatic stay. As such, it was void, or at least voidable. *Landmark v. Schaefbauer,* 41 B.R. 766 (Bankr.D.Minn.1984); *In re Victoria Grain Co. of Mpls.,* 45 B.R. 2 (Bankr.D. Minn.1984). The notice was without legal effect; it did not terminate the franchise relationship. *In re Quinones Ruiz,* 98 B.R. 636, 638 (Bankr.D.P.R.1988); *In re Joyner,* 46 B.R. 130, 135 (Bankr.M.D.Ga. 1985). Even though neither party has requested an adjudication on the propriety of the purported termination, the Court will make one *sua sponte* to settle the question.

## II. Amoco's Entitlement to Relief from Stay.

Amoco now seeks relief from stay so it may serve Debtors and the Trustee with a notice of termination of the premises lease and Dealer Supply Agreement, and then consider the pre-petition franchise relationship as ended. The Trustee requests that the motion be denied, asserting that the franchise rights may be of substantial value. He states that he needs time to further evaluate and then to market and liquidate those rights for the benefit of creditors, presumably by assumption and assignment pursuant to 11 U.S.C. §§ 365(a) and 365(f). The parties have expressly joined several issues of law. Their arguments suggest several other issues, while not expressly joining them.

### A. Governance of Petroleum Marketing Practices Act.

■ Amoco correctly notes that the overall relationship between it and Debtors was a "franchise relationship" between a refiner/distributor and a retailer of petroleum products and, hence, was governed by the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 *et seq.* (the "PMPA").[1] Amoco's right to terminate Deppe's rights as franchisee were structured in the first instance by the parties' contracts, but are further qualified and limited by the terms of the PMPA. *See* 15 U.S.C. § 2802(a); *Wisser Co., Inc. v. Mobil Oil Corp.,* 730 F.2d 54, 58 (2d Cir.1984). The PMPA establishes minimum federal standards governing the termination or nonrenewal of franchise relationships between refiners and distributors of petroleum products, and retailers thereof; it prohibits termination or nonrenewal without proper grounds and specified advance notice. S.REP. No. 731, 95th Cong., 2d Sess. 18–19 (1978), U.S.Code Cong. & Admin.News 1978, 873, 876–878; *Cont'l Ent., Inc. v. Am. Oil Co.,* 808 F.2d 24, 26 (8th Cir.1986). The primary objective of the PMPA is to protect franchisees from arbitrary and discriminatory terminations. *Id.*

■ Upon the filing of this case, Deppe's rights as franchisee passed into the bank-

---

1. Amoco is a "refiner" within the meaning of 15 U.S.C. § 2801(5), and Deppe was a "retailer" within the meaning of 15 U.S.C. § 2801(7). Among its described examples of "franchises," 15 U.S.C. § 2801(1) includes "any contract under which a retailer ... is authorized to occupy leased marketing premises, which premises are to be employed in connection with the sale ... of motor fuel under a trademark which is owned or controlled by such refiner ..." 15 U.S.C. § 2801(1)(B)(i). It also includes "any contract pertaining to the supply of motor fuel which is to be sold ... under a trademark owned or controlled by a refiner ..." 15 U.S.C. § 2801(1)(B)(ii).

ruptcy estate. 11 U.S.C. § 541(a). Debtors did not choose to claim those rights as exempt, and as such they are subject to the Trustee's administration. The estate has all of the same property rights under the agreements, and bears all of the same burdens, as Deppe did pre-petition. *In re Schauer*, 835 F.2d 1222, 1225 (8th Cir. 1986). Thus, the PMPA is as applicable to the relationship between Amoco and the Trustee, as it was to Deppe himself. The only enhancement of rights and powers *vis-a-vis* the franchise relationship which the Trustee enjoys are those conferred upon him by the express terms of the Bankruptcy Code—here, the right to assume and assign the agreements pursuant to 11 U.S.C. § 365, consistent with the requirements and limitations of § 365.

### B. Amoco's Asserted Ground for Termination

Amoco argues that it is entitled to terminate the premises lease and Dealer Supply Agreement because Debtors and/or the bankruptcy estate failed to operate the service station for more than seven consecutive days, commencing at least as early as the morning of December 11, 1989. It notes that Paragraph 15(b) of the premises lease establishes this as a ground for termination of the lease. It also cites 15 U.S.C. § 2802(b)(2)(C) of the PMPA, which provides in pertinent part:

.        .        .        .        .

(2) For purposes of this subsection, the following are grounds for termination of a franchise ...:

.        .        .        .        .

(C) The occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise ... is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence—

.        .        .        .        .

(ii) not more than 60 days prior to the date on which notification of termi-

nation ... is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title.

In turn, 15 U.S.C. § 2802(c) provides "an illustrative ... list of events deemed to be relevant to the franchise relationship and as a result of which termination is reasonable within the meaning of [§] 2802(b)(2)(C)." *Desfosses v. Wallace Energy, Inc.*, 836 F.2d 22, 26 (1st Cir.1987). This list includes "failure by the franchisee to operate the marketing premises for ... 7 consecutive days." 15 U.S.C. § 2802(c)(9). "If an event falls within the list, termination is conclusively presumed to be reasonable as a matter of law." *Desfosses v. Wallace Energy, Inc.*, 836 F.2d at 26.

Citing *Smoot v. Mobil Oil Corp.*, 722 F.Supp. 849 (D.Mass.1989), and 15 U.S.C. § 2802(c)(9), Amoco argues that the failure to maintain operations at the station is an event reasonably meriting termination under 15 U.S.C. § 2802(b)(2)(C). Thus, Amoco argues, it justifies termination of the Dealer Supply Agreement, both by direct application of the PMPA pursuant to 15 U.S.C. § 2802(a)(1), and by the incorporation of the PMPA under Paragraph 18 of the Dealer Supply Agreement.

In response, the Trustee asserts that even though station operations were interrupted for a period of some 19 or more days, Amoco has not yet terminated the franchise relationship via the procedure established under the agreements and the PMPA. He also notes that Debtors' prepetition delinquency in payment to Amoco can be readily cured by payment out of the estate when it has funds. Thus, the Trustee argues, the estate is entitled to an opportunity to evaluate the merits of assuming the agreements and, after that evaluation, to assume or reject them as appropriate.

The Trustee's argument, unfortunately, does not take account of a crucial limitation on his ability to assume these agreements which is imposed by the facts and by bankruptcy law. Under the Bankruptcy Code,

If there has been a default in an executory contract or unexpired lease of the debtor, the Trustee may not assume such contract or lease unless, at the time of assumption of such contract release, the Trustee—

(A) cures, or provides adequate assurance that the Trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the Trustee will promptly compensate, a party other than the debtor to such contract release, for any actual pecuniary loss to such party resulting from such default . . .

11 U.S.C. § 365(b)(1).

As Amoco's counsel points out, the 19–day interruption in operations upon which Amoco relies as grounds for termination is such a default. Both factually and legally, however, it is a default which is incapable of cure or remedy.

The lapse in operations took place. The estate simply cannot overcome that historical fact. Neither can it deny the significance given to such a lapse under the agreements, and under the PMPA; as two courts have noted, the steady maintenance of gasoline station operations during the days and hours fixed by franchise agreements is a key goodwill value to the refiner/distributor, which is given special deference in franchise litigation involving such businesses. *Crown Central Petroleum Corp. v. Waldman*, 515 F.Supp. 477, 483 (M.D.Pa.1981), *aff'd without opin.*, 676 F.2d 684 (3d Cir.1982); *Smoot v. Mobil Oil Corp.*, 722 F.Supp. at 855. *See also Sun Refining & Marketing Co. v. Rago*, 741 F.2d 670 (3d Cir.1984) (similarly concluding 10–day interruption of operations was proper ground for termination, though inquiring beyond mere fact of lapse in operations to examine adequacy of preferred excuses for the lapse). The estate cannot "undo" the historical event at this point.

More crucially, the PMPA does not require Amoco to afford the estate an opportunity to remedy this sort of default before the franchisee's rights may be forfeited via termination.

The PMPA contemplates that certain franchisee defaults are capable of cure by the franchisee's corrective action, and are not "so serious as to undermine the entire [franchise] relationship." *See Wisser Co., Inc. v. Mobil Oil Corp.*, 730 F.2d at 58–59. In the case of the termination of a franchise during its term, the "failure by the franchisee to exert good faith efforts to carry out the provisions of the franchise" is such a curable default. 15 U.S.C. § 2802(b)(2)(B). In the case of nonrenewal of a franchise after the end of its term, such curable defaults include "the receipt [by the franchisor] of numerous bona fide customer complaints . . . concerning the franchisee's operation," 15 U.S.C. § 2802(b)(3)(B), or the "failure by the franchisee to operate the marketing premises in a clean, safe, and healthful manner," 15 U.S.C. § 2802(b)(3)(C). The franchisor cannot deprive the retailer of his franchise on the grounds envisioned by these provisions, without having first given the retailer notice of the default and one or more opportunities to remedy it.

The legislative history to the PMPA recognizes, however, that other sorts of franchisee breaches, even those not readily reducible to a dollar-value, are so grave as to merit termination without opportunity for cure or remedy. S.REP. No. 731, 95th Cong., 2d Sess. at 18 (1978), U.S.Code Cong. & Admin.News 1978, 876; *Wisser Co. Inc. v. Mobil Oil Corp.*, 730 F.2d at 58. The notice and termination provisions of 15 U.S.C. § 2802(b) require this prior warning only for the classes of breaches previously cited; they do not afford it for certain others. The structure of these provisions evidences, on the face of the statute, that Congress distinguished between two classes of defaults; Congress granted a right to remedy the default within a fixed period after notice for one class of defaults, and contemplated no such right for the others. *Id.* The lapse of operations which falls within the ambit of 15 U.S.C. § 2802(b)(2)(C) is in the latter class. At

least two courts which have addressed the situation of an interruption in operations or sales have implicitly agreed, and have found the refiner/distributor within its rights in terminating the franchise on the stated ground alone, without affording the franchisee a second chance. *Smoot v. Mobil Oil Corp.*, 722 F.Supp. at 854–55; *Crown Central Petroleum Corp. v. Waldman*, 515 F.Supp. at 482–84.[2]

The foregoing analysis makes two things clear. First, Amoco has a legally-sufficient ground for termination of the franchisee's rights which the estate holds. Second, the estate's asserted wish to administer the value of those rights for the benefit of creditors does not furnish the estate with an excuse for the default, or a defense to the termination.

C.  Additional Ground for Termination and Relief: Estate's Post–Petition Loss of Leasehold and Franchise Rights.

■ The passage of events during this bankruptcy case has given Amoco an additional ground for termination. Under the Bankruptcy Code,

> In a case under chapter 7 ... if the trustee does not assume or reject an executory contract ... within 60 days after the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such contract is deemed rejected.

11 U.S.C. § 365(d)(1). In addition,

> ... in a case under any chapter of [the Bankruptcy Code], if the Trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within sixty days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the Trustee shall immediately surrender such nonresidential real property to the lessor.

11 U.S.C. § 365(d)(4).

As acknowledged by counsel for the Trustee at the February 16, 1990 hearing, the estate did not communicate an unequivocal intent to assume the premises lease or the Dealer Supply Agreement to Amoco by February 9, 1990. That was the sixtieth day after Debtors' bankruptcy filing. Section 365(d)(4) required the Trustee to do at least that much to preserve the estate's or its successor's right to demand performance under the premises lease. *See In re 1 Potato 2, Inc.*, 58 B.R. 752 (Bankr.D.Minn. 1986); *In re Re–Trac Corp.*, 59 B.R. 251 (Bankr.D.Minn.1986). The almost-identical language of § 365(d)(1) required him to do at least the same to preserve the estate's options as to the Dealer Supply Agreement. He did not; thus, by operation of these separate Code provisions, the estate is deemed to have rejected both agreements.[3] It is now under a statutory duty to vacate the premises in favor of Amoco.

Both franchise agreements having been rejected, the estate no longer has the option of ultimately compelling Amoco's performance for it or for its benefit. Amoco is thus free of both agreements, and no longer has to answer to the estate in its disposition of the station site or its associated dealership.

---

**2.**  *Sun Refining & Marketing Co. v. Rago*, 741 F.2d 670, does not explicitly stand for this proposition, notwithstanding its result in favor of the franchisor. In inquiring into the factual reasons for the franchisee's interruption of operations, the *Rago* court implicitly assumes that the PMPA allows a franchisee to obtain judicial forgiveness of a default which is otherwise "noncurable" under the statute. It does so without reference to any specific authority on the face of the statute or in legislative history.

**3.**  The Court acknowledges that *In re Quinones Ruiz* stands for a contrary position, on the rejec-

tion of the premises lease if considered alone. The *Quinones Ruiz* court based its ruling on the conclusion that a franchise which involves a premises lease and a petroleum supply agreement constitutes an indivisible "executory contract," which then would be subject to more open-ended deadlines for assumption or rejection in a Chapter 13 case like the one at bar there. *See* 98 B.R. at 638. This is a Chapter 7 case, subject to the firm deadline of § 365(d)(1); thus, any discussion of the soundness of the *Quinones Ruiz* court's melding of the separate agreements would be purely academic.

■ Going beyond this, however, the deemed rejection of the premises lease standing alone would create an additional ground for termination of the Dealer Supply Agreement. By its own terms, the Dealer Supply Agreement applies only to the premises subject to the Amoco lease. The specific (and arcane) event of the loss of a franchisee's rights as lessee by operation of § 365(d)(4) is not set forth in the illustrative examples at 15 U.S.C. § 2802(c)(1)–(12). However, the loss of the possessory interest in a service station which was to be the exclusive situs for performance under a Dealer Supply Agreement clearly is an "event which is relative to the franchise relationship and as a result of which termination of the franchise ... is reasonable." [4] Under the plain terms of the Dealer Supply Agreement, the bankruptcy estate could not compel Amoco to perform at another location, even if the estate were to find a purchaser-assignee for the franchisee's rights under it. Thus, Amoco would have a second ground for termination of the Dealer Supply Agreement, were that agreement not deemed rejected already.[5]

**D. Terminability of Franchise as Cause for Relief from Stay.**

■ Amoco's request for relief from stay is essentially mooted by the foregoing conclusions. In the interests of a comprehensive treatment of all argued issues, however, some further discussion is appropriate. Amoco argues that the existence of nonremedial grounds for termination, and the estate's resultant inability to assume the franchise agreements, give it "cause" for a grant of relief from stay pursuant to 11 U.S.C. § 362(d)(1). In the context of the present case, and considering the present facts and circumstances, Amoco is correct.[6] *See In re Quinones Ruiz*, 98 B.R. at 638–39; *In re Joyner*, 55 B.R. 242, 246 (Bankr.M.D. Ga.1985). Broadly read, § 362(a)(3) still restrains Amoco from serving notices of termination of the franchise agreements, to the extent that any franchisee's rights survive the deemed rejection. Given the inevitable outcome of any contest over the estate's claim to administer those rights, it should restrain Amoco no longer. Amoco may enforce its right to terminate all remaining aspects of the franchise relationship on the grounds it asserts,[7] by giving

---

**4.** As if to recognize this conclusion in a different context, 15 U.S.C. § 2802(c)(4) recognizes that the loss of a *franchisor's* leasehold for a service station constitutes a ground for termination *of a franchisee-sublessor* who was previously on notice of the prospect of that loss. Clearly, the PMPA gives substantial protection to the right of a franchisor to control the situs of the retail sales of its products, and cannot be read to give the franchisee a free or even qualified right to demand performance at a location not specified in the franchise agreement(s).

**5.** This observation, *dicta* as it may be, would have some applicability in a Chapter 11 case, where the debtor-in-possession would be free of the draconian deadline of § 365(d)(1), but still subject to that of § 365(d)(4).

**6.** The Court is mindful that in *In re O–Jay Foods, Inc.,* 110 B.R. 895, 897–98 (Bankr.D.Minn.1989) it held that a lessor of personal property whose relationship with the debtor fell within the ambit of 11 U.S.C. § 365 could not invoke the remedy of relief from stay so it could then take action to terminate its month-by-month lease. There, the court relegated the lessor to two remedies, not mutually exclusive: an order compelling assumption or rejection by a specified date pursuant to § 365(d)(2), and/or the making of an administrative-expense claim for unpaid post-petition rent. Absent a court-imposed deadline for assumption or rejection,

however, the estate in *O–Jay Foods* was allowed the extended period which § 365 granted to it for assumption or rejection. Had the debtor there been in default, and had that default been nonremediable under nonbankruptcy law, the result would have been different. *O–Jay Foods* stands for the proposition that a personal property lessor may not assert a right to "adequate protection" in the sense of 11 U.S.C. § 361 for its contractual right of termination, however broad that right may be, and then seek relief from stay to terminate on the ground that it is not adequately protected. 110 B.R. at 897–98. Where the estate is legally incapable of assuming a lease for the benefit of creditors, adequate protection analysis is just as inapplicable. However, in such a case there is other, proper "cause" under § 362(d)(1), to allow the lessor to formally terminate the lease.

**7.** By this point, more than 60 days have passed since the last day of the 7–day interruption in operations which Amoco alleges as the ground for termination; thus, were Debtors not in bankruptcy, Amoco would be barred by 15 U.S.C. § 2802(b)(2)(C)(ii) from giving less than 90 days' notice of termination. However, because the asserted breach occurred mainly after Debtor's bankruptcy filing, and given the pendency of the present proceeding before this Court, that 60–day period was equitably tolled, and does not commence until the date of this order.

the statutory notice of termination.[8]

### E. Conclusion.

The bankruptcy estate's deemed rejection of the franchise agreements probably moots the issue of Amoco's contractual and statutory right to terminate the agreements. Even were this not the case, Amoco has at least two grounds for terminating the franchisee's rights under the agreements. 11 U.S.C. § 362(a)(3) maintains a tenuous veil of protection over the estate's rights, such as they are. Nothing would be gained for creditors of the estate by preserving that veil. Amoco is entitled to the relief which it requests.

IT IS THEREFORE DETERMINED AND ORDERED:

1. That the act of Amoco's district manager in giving notice of termination of Douglas Deppe's Amoco franchise by a December 20, 1989 letter, was done in violation of 11 U.S.C. § 362(a)(3), and has no legal force and effect.

2. That the August 5, 1988 premises lease between Amoco and Debtor Douglas Deppe, for the premises at 135 North Century Avenue, Maplewood, Minnesota, is deemed rejected by operation of 11 U.S.C. § 365(d)(4); to the extent that the bankruptcy estate still maintains possession of that premises, it shall surrender the same to Amoco forthwith.

3. That, to the extent necessary, Amoco is granted relief from the automatic stay of 11 U.S.C. § 362(a) to serve a notice of termination of the premises lease upon the Trustee and upon Douglas Deppe, and to enforce its right to possession of the leased premises.

4. That, to the extent that the bankruptcy estate retains any rights under the August 5, 1988 Dealer Supply Agreement between Douglas Deppe and Amoco, it is incapable of curing the breach and default thereunder which occurred upon the interruption of service station operations in December, 1989. Hence, the estate may not assume and assign the franchisee's rights under that Dealer Supply Agreement pursuant to 11 U.S.C. §§ 365(a) and (f).

5. That, to the extent necessary, Amoco is granted relief from the automatic stay of 11 U.S.C. § 362(a) to serve a notice of termination of the Dealer Supply Agreement upon the Trustee and upon Douglas Deppe, and to take all subsequent actions pursuant to the terms of the Dealer Supply Agreement and the Petroleum Marketing Practices Act to fully consummate that termination.

---

8. Amoco may give notice which is of a duration "reasonably practicable" within the contemplation of 15 U.S.C. § 2804(b)(1)(A), and should be prepared to comply with 15 U.S.C. § 2804(b)(1)(B).